The PEOPLE of the State of Colorado,

In the Matter of the Petition of A.L.B., Petitioner,

For the Relinquishment of a Child,

B.L.B., and Concerning J.W.R., Respondent–Appellant,

and

Adoptions: Advocacy & Alternatives, a Colorado non-profit corporation, and John and Mary Does, Intervenors–Appellees.

No. 98CA2418.

Colorado Court of Appeals, Div. II.

Nov. 26, 1999.

No Appearance for Petitioner.

Deborah L. Getz, Severance, Colorado, for Respondent–Appellant.

W. Troy Hause, Greeley, Colorado; Lamm, Freeman and Butler, Julia M. Knearl, Louisville, Colorado; Houtchens, Daniel & Greenfield, LLC, Dallas D. Greenfield, Greeley, Colorado, for Intervenors–Appellees.

Opinion by Judge RULAND.

J.W.R. (father) appeals from the judgment terminating the parent-child legal relationship with his son, B.L.B. We affirm.

Mother and father were not married. Prior to the child's birth, they decided that they were not ready to assume the responsibilities of parenthood. Accordingly, both parents requested adoption and relinquishment counseling from Adoptions: Advocacy & Alternatives (AAA), a licensed child placement agency. As part of the counseling, mother and father selected a couple (the Does) to adopt the child. Three weeks before the child was born, however, the paternal grandmother informed mother that she and her husband wanted to parent the child.

Following the child's birth, mother filed a petition in the Weld County district court for relinquishment together with a petition to terminate father's parental rights. The petition for relinquishment alleged that AAA had custody of the child. Shortly thereafter, John and Mary Doe, who had assumed physical custody of the child upon his release from the hospital, filed a petition for termination of father's parental rights in the Weld County proceeding.

During this same period, father initiated a child custody proceeding in Larimer County.

Venue of the Weld County case was later transferred to the Larimer County District Court. AAA then filed a petition to terminate father's parental rights in the Larimer County proceeding. The paternal and maternal grandmothers and the Does all filed motions to intervene.

The district court entered an order allowing the Does to intervene as a matter of right pursuant to § 19–5–105(3.6), C.R.S.1999. However, the court denied the grandmothers' motions. Following an evidentiary hearing, the trial court granted the petition to terminate, finding that the criteria for termination set forth in § 19–5–105, C.R.S.1999, had been established by clear and convincing evidence.

## I.

Father contends that the order of termination must be reversed for a number of procedural reasons. First, he claims that mother's petition for termination filed in Weld County was defective. Second, he asserts that he did not receive notice of an emergency *ex parte* hearing held in Weld County. Finally, he claims that he was not properly notified of the termination proceeding in Larimer County. We are not persuaded by any of these contentions.

### A.

Section 19–5–105(1), C.R.S.1999, provides that if one parent proposes to relinquish his or her parental rights, the agency or the person having custody of the child shall file a petition to terminate the other parent's rights.

■ Here, the record reveals that physical custody of the child was transferred from mother to the Does shortly after the child's birth. The record further indicates that AAA had legal custody of the child at all pertinent times. Hence, even though mother may not have had custody of the child at the time she filed her petition to terminate in Weld County, any defect in subject matter jurisdiction was cured by the filing of the subsequent petitions to terminate by the Does and AAA. *See Stuart v. Frederick R. Ross Investment Co.,* 773 P.2d 1107 (Colo. App.1988).

### B.

Section 19–1–113, C.R.S.1999, authorizes the issuance of *ex parte* emergency orders and delineates the procedure to be used in securing such orders. From the limited record before us, it appears that the statutory procedure was followed here. Accordingly, we perceive no error in the issuance of the *ex parte* emergency order.

### C.

■ Finally, the record reveals that a copy of the petition to terminate filed in the Larimer County proceeding and notice of the termination hearing were properly served on father's attorney. There is no requirement in statutory or case law requiring service of notice on both counsel and a client. *See People in Interest of J.E.B.,* 854 P.2d 1372 (Colo.App.1993). Thus, we find no error.

## II.

■ Father next contends that the trial court erred in denying the paternal grandmother's motion to intervene. Because the denial of the motion to intervene impacts only grandmother's rights, *see People in Interest of C.E.,* 923 P.2d 383 (Colo.App.1996), we conclude that father lacks standing to raise this issue on appeal. *See Biel v. Alcott,* 876 P.2d 60 (Colo.App.1993) (only parties adversely affected by a judgment may appeal it).

## III.

■ Father contends that § 19–5–105, C.R.S.1999, violates his constitutional right to equal protection. He asserts that, unlike the dependency or neglect statute, § 19–3–604, C.R.S.1999, the relinquishment and adoption statute does not require either reasonable efforts and services to rehabilitate the parent or the consideration and elimination of less drastic alternatives to termination. We decline to address this contention as well.

■ Equal protection requires the government to treat similarly situated persons in a similar manner. *Tassian v. People,* 731 P.2d

672 (Colo.1987). However, in order to raise an equal protection challenge under the circumstances here, plaintiff must first demonstrate that he is personally affected by the alleged statutory defects. *People in Interest of R.J.A.*, 994 P.2d 470 (Colo.App.1999); *People in Interest of E.I.C.*, 958 P.2d 511 (Colo. App.1998).

In this case, the trial court found that father is an unfit parent at the present time and thus not able to take custody of the child. The court also found that father's problems arising out of his sexual abuse of his sister would require "long-term treatment and counseling."

Next, the court found that father's mother's home was not suitable as a placement resource because of various issues arising out of dysfunctional behavior within the family. Finally, the court found that it would be pure speculation to conclude and "grossly unlikely" that father would ever end up with custody of the child even with the institution of a dependency and neglect proceeding, adoption of a treatment plan and the resulting delay.

In sum, the court found that to institute a dependency and neglect proceeding would simply delay the inevitable to the substantial detriment of the child's best interests. Stated another way, the court in effect found that the dependency and neglect proceeding would result in termination of father's parental rights.

■ The credibility of the witnesses and the sufficiency of the evidence, its probative effect and weight, as well as the inferences and conclusions to be drawn therefrom, are within the discretion of the trial court. Thus, a trial court's findings and conclusions will not be disturbed on review if the record supports them. *People in Interest of C.A.K.*, 652 P.2d 603 (Colo.1982). We conclude that the court's findings are supported by the record and thus we may not disturb them on appeal.

As a result, on this record father has failed to demonstrate the requisite standing to make an equal protection claim.

## IV.

■ Father also contends that the evidence does not support an order of termination under § 19–5–105. Again, we disagree.

The criteria for termination of the parent-child legal relationship under § 19–5–105(3.1), C.R.S.1999, are:

[A] finding that termination is in the best interests of the child and that there is clear and convincing evidence of one or more of the following:

(a) That the parent is unfit. . . .

(b) That the parent has not established a substantial, positive relationship with the child . . . .

(c) That the parent has not promptly taken substantial parental responsibility for the child . . . .

### A.

Father asserts that the evidence was insufficient to show that he was unfit. We disagree.

Among the considerations in determining a parent's fitness in a relinquishment and adoption proceeding are conduct toward another child of a sexually abusive nature and neglect of the child. Section 19–5–105(3.1)(a)(I), (III), and (VI), C.R.S.1999.

Here, father admitted that he had sexually abused his sister and conceded that he could not assume physical custody of the child at the time of the termination hearing. Father's sexual abuse counselor testified further that sex offender treatment lasted a minimum of two and a half years and that the child should not be left alone with father.

Thus, the record supports the trial court's finding that father was unfit, and it will not be disturbed on review. *See People in Interest of C.A.K., supra.*

### B.

Lastly, father asserts that termination was not in the child's best interests. We disagree.

In considering the child's best interests, the trial court must consider whether the child has developed a strong, positive bond with his physical custodian, the duration of the bond, and whether the child would likely

suffer significant psychological harm if removed from the home of the physical custodian. Section 19–5–105(3.2), C.R.S.1999.

Here, the child's guardian *ad litem* recommended that the child remain with the Does and opined that termination was in the child's best interests. This opinion was based in part on the guardian's determination that the four-month-old child was attaching to the Does, that the Does provided a suitable, safe home, that father was not likely to be available to the child in the near future, and that the paternal grandmother's home was not an appropriate placement option. Also, the child's mother testified that it was in the child's best interests to remain with the Does.

Thus, the evidence supports the trial court's finding that termination was in the child's best interests, and it will not be disturbed on review. *See People in Interest of C.A.K., supra.*

## V.

■ Father contends that his due process right of confrontation was violated by the trial court's refusal to allow him to call the Does as witnesses. He argues that the ruling prevented him from presenting evidence of the child's bonding and best interests. Even if we assume that father had a right to call the Does, we find no reversible error.

■ A guardian *ad litem* is "a person appointed by a court to act in the best interests of a person whom the person appointed is representing in proceedings under [the Code]...." Section 19–1–103(59), C.R.S. 1999. A guardian *ad litem* may make recommendations to the trial court by presenting his opinions based upon an independent investigation or by advocating a specific result based upon the evidence. *People in Interest of J.E.B., supra.*

Here, the child's guardian *ad litem* chose to present his opinions based upon an independent investigation. The trial court received the guardian's report into evidence without objection by father, and it took judicial notice of all of the reports filed in the proceeding. The reports filed by the guardian *ad litem* contained extensive information concerning the Does, their suitability as parents, and their relationship with the child, as well as general information concerning the child's best interests.

Furthermore, during the termination hearing, the trial court permitted father to call the guardian *ad litem* as a witness and to cross-examine him as to his reports and opinions. Next, father has failed to demonstrate how lack of direct testimony from the Does prejudiced his defense to termination of his parental rights. Hence, we find no error. C.A.R. 35(e).

## VI.

■ Finally, father contends that wrongdoing on the part of AAA and its director requires reversal of the order of termination. However, that contention was not argued to the trial court at the conclusion of the evidentiary hearing. Hence, we decline to address it for the first time on appeal. *See Matthews v. Tri–County Water Conservancy District,* 200 Colo. 202, 613 P.2d 889 (1980).

We have considered and are unpersuaded by father's other contentions for reversal of the judgment.

The judgment is affirmed.

Judge CRISWELL and Judge MARQUEZ concur.