The **PEOPLE** of the State of Colorado, In the Interest of **N.A.T., J.M.T., Jr.,** and **D.B.G.,** Children, Upon the Petition of the Denver Department of Human Services, Petitioner–Appellee,

and Concerning **T.T.C.,** Respondent– Appellant.

No. 05CA1512.

Colorado Court of Appeals, Div. V.

March 9, 2006.

Certiorari Denied April 24, 2006.

Cole Finegan, City Attorney, Kathryn Smith, Assistant City Attorney, Denver, Colorado, for Petitioner–Appellee.

Deborah Gans, Denver, Colorado, for Respondent–Appellant.

VOGT, J.

T.T.C. (mother) appeals from a judgment terminating the parent-child legal relationship between her and her children N.A.T. and J.M.T., Jr., and from a judgment allocating permanent parental responsibilities of her child D.B.G. to the child's father, R.J.G. We affirm.

## I.

Mother contends that reversal is required because she was not advised of her right to a hearing before a judge. We disagree.

At the first appearance in a dependency or neglect proceeding, a parent must be fully advised of his or her legal rights. Section 19–3–202(1), C.R.S.2005; C.R.J.P. 4.2(a); *see People in Interest of A.M.D.*, 648 P.2d 625 (Colo.1982). If the parent's first appearance is before a magistrate, the magistrate must also advise the parent that he or she has the right to a hearing before a judge. Section 19–1–108(3)(a), C.R.S.2005; *In re R.G.B.*, 98 P.3d 958 (Colo.App.2004).

Waiver of the formal advisement pursuant to § 19–3–202(1) includes a waiver of the § 19–1–108(3)(a) advisement of the right to be heard by a judge. *People in Interest of T.E.M.*, 124 P.3d 905 (Colo.App.2005).

Here, the transcript of the hearing during which mother first appeared and the minute order of that hearing show that mother

waived her right to formal advisement. Accordingly, we reject mother's contention.

## II.

■ Mother contends that the juvenile court erred in finding that it was in D.B.G.'s best interests to allocate permanent parental responsibilities to D.B.G.'s father. However, mother did not object to allocation of permanent parental responsibilities to father during the hearing before the juvenile court. Rather, she agreed that that disposition was in the child's best interests. Accordingly, we will not consider her contention on appeal. *See People in Interest of C.T.*, 746 P.2d 56 (Colo.App.1987).

## III.

■ Mother next contends that the evidence was insufficient to support the criteria for termination of her parent-child legal relationship with N.A.T. and J.M.T., Jr. She asserts that she completed the significant portions of the treatment plan and that she would be available to parent the children within six months. We disagree.

■ To terminate the parent-child legal relationship pursuant to § 19–3–604(1)(c), C.R.S.2005, clear and convincing evidence must establish that the child has been adjudicated dependent or neglected; that an appropriate treatment plan, approved by the trial court, has not been complied with by the parent or has not been successful in rehabilitating the parent; that the parent is unfit; and that the parent's conduct or condition is unlikely to change within a reasonable time. *See People in Interest of A.M.D., supra.*

The parent is responsible for assuring compliance with and success of a treatment plan. *People in Interest of A.H.*, 736 P.2d 425 (Colo.App.1987). Although absolute compliance is not required, partial compliance, or even substantial compliance, may not result in a successful plan that renders the parent fit. *People in Interest of D.L.C.*, 70 P.3d 584 (Colo.App.2003); *see People in Interest of C.A.K.*, 652 P.2d 603 (Colo.1982).

In determining whether a parent can become fit within a reasonable time, a trial court may consider whether any change has occurred during the pendency of the dependency or neglect proceeding, the parent's social history, and the chronic or long-term nature of the parent's conduct or condition. *People in Interest of D.L.C., supra.* A reasonable time is not an indefinite time, and it must be determined by considering the physical, mental, and emotional conditions and needs of the child. *People in Interest of D.L.C., supra; see* § 19–3–604(3), C.R.S. 2005.

■ The People have the burden to establish the criteria for termination. *People in Interest of A.N.W.*, 976 P.2d 365 (Colo. App.1999). The credibility of the witnesses and the sufficiency, probative effect, and weight of the evidence, as well as the inferences and conclusions to be drawn from it, are within the discretion of the trial court. Thus, a trial court's findings and conclusions will not be disturbed on review if the record supports them. *People in Interest of C.A.K., supra.*

Intervention here was necessitated when N.A.T. was hospitalized at the age of two months with bronchitis and appeared malnourished. Two-year-old J.M.T., Jr. was also underweight. In addition, mother had arrived at the hospital smelling of alcohol, appeared to be under the influence of substances, and she admitted that she drank alcohol during her pregnancy with N.A.T.

To address these concerns, the treatment plan required that mother (1) cooperate with the Denver Department of Human Services and all treatment providers; (2) maintain stable housing and employment; (3) complete parenting classes or individual parenting instruction; (4) participate in a mental health evaluation, if deemed necessary, and follow any recommendations; (5) complete a substance abuse evaluation and follow any recommendations; and (6) ensure that the children's physical, developmental, medical, and educational needs were met upon their return to her custody.

Mother partially complied with the treatment plan. However, she did not follow through on a referral for a mental health evaluation, obtain employment, or cooperate with her caseworker or treatment providers.

Further, mother repeatedly tested positive for cocaine and was discharged unsuccessfully from outpatient treatment programs. Although she completed a three-week residential substance abuse treatment program, she did not comply with the recommended outpatient treatment after her release and she relapsed within weeks.

The caseworker testified that, despite having completed parenting classes, mother was unable to attend to the children's needs during her visits with them. The children had special developmental and educational needs resulting from prenatal alcohol exposure and malnourishment. The child protection worker testified that they needed stable permanent homes, with nurturing caregivers, as soon as possible.

Relying on this evidence, the juvenile court found that mother did not successfully comply with the treatment plan; that mother's continuing use of cocaine interfered with her ability to provide reasonable parental care and rendered her unfit; and that, in light of her lack of progress during the pendency of the proceeding, she would not likely change within a reasonable time. These findings have support in the record and therefore will not be disturbed on review. *See People in Interest of C.A.K., supra.*

### IV.

■ Mother further contends that the juvenile court erred in failing to consider less drastic alternatives to termination. Again, we disagree.

Implicit in the statutory scheme for termination set forth in § 19–3–604(1)(c) is a requirement that the trial court consider and eliminate less drastic alternatives before entering an order of termination. *People in Interest of M.M.*, 726 P.2d 1108 (Colo.1986). In so doing, the trial court must give primary consideration to the physical, mental, and emotional conditions and needs of the child. *People in Interest of D.B–J.*, 89 P.3d 530 (Colo.App.2004); *see* § 19–3–604(3).

Mother identified her cousin as a possible placement alternative for the children a few days before the termination hearing. The caseworker made an appointment to discuss the matter with the cousin, but the cousin failed to attend. Likewise, the cousin did not appear at the termination hearing or otherwise indicate that she was willing to provide permanent care for the children.

The maternal grandmother was considered as a placement alternative early in the proceeding. However, a home study rejected placement of the children with her because of inadequate housing. When she was contacted later about having another home study, she responded that she still had "several adults living in the home and ... [wasn't] able to be a placement option for the kids."

A paternal cousin had also been identified as a placement option. However, when contacted, the cousin indicated that she would not be able to care for the children.

Thus, the juvenile court's finding that there were no viable alternatives to termination is supported by the evidence. Accordingly, that finding may not be disturbed on review. *See People in Interest of C.A.K., supra.*

### V.

■ Finally, mother asserts that the time limitations in C.A.R. 3.4 are "too stringent to allow counsel to properly prepare an opening brief on her behalf," and that she has been denied her right to due process by the absence of a proper transcript to aid in preparation of her arguments. She also requests leave to amend or expand her petition on appeal within a reasonable time after the official transcript becomes available. In support of this contention, mother states:

> In order to determine if Mother was properly advised and therefore granted a fundamentally fair proceeding, counsel requires a copy of the transcript of the hearings held February 9, 2004 and February 18, 2004. These hearings were digitally recorded, and counsel was unable to obtain transcripts prior to preparation of the within petition.

> Further, counsel requires a copy of the transcript of the termination hearing in order to verify that her notes taken during trial were adequate. Counsel had contacted both court reporters immediately after

the hearing to request a transcript so that it would be available prior to the date the petition was due to be filed. Said transcripts were not ready as promised. Counsel believes that it is impossible to prepare an adequate opening brief without proper transcripts available.

The People point out, in their response, that the applicable rules permit the use of unedited transcripts in preparing a petition on appeal and that mother has not indicated whether she ever requested an unedited transcript.

Upon consideration of mother's arguments, we perceive no basis for finding a due process violation or for affording other relief.

The petition on appeal is an abbreviated pleading, designed to be completed in an expeditious manner. *See* C.A.R. 3.4(g)(3) & Form 4. The petition need only state the issues on appeal and identify the material facts and supporting legal authorities. References to page and line numbers in the record are not required. C.A.R. 3.4(g)(3)(D)-(F). Counsel may request a copy of the unedited transcript to aid in preparation of the petition. C.A.R. 3.4(e)(6). Full review of the record, including the official transcript, is undertaken by this court, which may "set the case for supplemental briefing on issues raised by the parties or noticed by the court." C.A.R. 3.4(j)(2).

Mother's counsel represented mother throughout the juvenile court proceedings. Counsel states that she needs transcripts, first, to determine whether mother was properly advised. However, although she raised the advisement issue in her petition and supported it with appropriate legal authority, our review of the record has established that mother is not entitled to relief on this basis. See Part I, above.

The only other reason given in support of this argument is that counsel requires a transcript "in order to verify that her notes taken during trial were adequate." Again, however, review of the official transcript has demonstrated that the substantive issues raised by mother on appeal, while properly set forth in her petition, do not entitle her to relief. Moreover, the official transcript has long since been available for review, but mother has at no time attempted to amend the issues raised in her petition or to urge new grounds for reversal of the judgments.

■ "Axiomatic to the exercise of judicial authority is the principle that a court should not decide a constitutional issue unless and until such issue is actually raised by a party to the controversy and the necessity for such decision is clear and inescapable." *People v. Lybarger,* 700 P.2d 910, 915 (Colo.1985); *see also United States v. Raines,* 362 U.S. 17, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960)(appellate court should neither anticipate a question of constitutional law in advance of the necessity of deciding it nor formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied).

■ Colorado decisions have consistently recognized that a party may not obtain relief on an as-applied due process challenge absent a showing of harm or prejudice. This principle applies regardless of the nature of the constitutionally protected interest at stake. *See, e.g., People v. Rodriguez,* 914 P.2d 230, 301 (Colo.1996)(rejecting due process challenge to sufficiency of appellate record by defendant sentenced to death, and stating: "We ... hold that, to obtain relief on a due process claim arising from an incomplete record, a defendant must *always* demonstrate specific prejudice resulting from the state of that record"—emphasis in original); *see also In re Smith,* 989 P.2d 165 (Colo.1999)(attorney's ability to practice law and earn a living); *People ex rel. A.L.B.,* 994 P.2d 476 (Colo.App.1999)(father's right to parent-child relationship with his son).

Thus, where there is no showing of prejudice, there is no "clear and inescapable necessity" to decide whether the challenged process might violate another parent's rights in a different case—let alone, whether the process is facially constitutional. For this reason, we do not address the issues raised in the dissent.

Mother has not demonstrated prejudice here. Therefore, she is not entitled to relief on this contention.

The judgments are affirmed.

CRISWELL *, J., concurs.

ROMÁN, J., dissents.

Judge ROMÁN dissenting.

Mother has expressly challenged the constitutionality of C.A.R. 3.4, by asserting that "she has been denied due process as guaranteed by the United States Constitution by the absence of a proper transcript to aid counsel in preparation of her arguments herein." Thus, the constitutional issue has been properly raised, and I conclude C.A.R. 3.4 is unconstitutional, as applied in this case. Accordingly, I would reverse and remand.

After two termination hearings occurred regarding mother's children, mother immediately requested transcripts of both hearings to prepare her petition on appeal. Although both court reporters promised that the transcripts would be ready, neither transcript was provided to mother as promised before her petition on appeal was due. Therefore, despite mother's attempt to secure transcripts as contemplated by C.A.R. 3.4, it is undisputed that she did not have access to them when preparing her petition on appeal.

The majority decides that mother cannot establish an as-applied due process violation "absent a showing of harm or prejudice." However, while most cases alleging due process violations require a showing of identifiable prejudice, a procedure employed by the state may involve such a probability of prejudice that the procedure is deemed inherently lacking in due process. *Estes v. Texas,* 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965). In my view, a procedure requiring a parent to prepare a petition on appeal without access to any kind of transcript is inherently lacking in due process. Indeed, I find it circular to argue that a parent cannot complain about not having a transcript unless he or she can show what the result of having the transcript would have been. *See Town of Somerset v. Montgomery County Bd. of Appeals,* 245 Md. 52, 66, 225 A.2d 294, 302 (1966)("It would be a mockery ·of justice to hold that a person cannot complain of the denial of the right to cross-examine unless he

can show what the result of the cross-examination would have been . . . .").

As recently as 2005, the United States Supreme Court reaffirmed that actual prejudice is not always required when making a due process allegation. *See Deck v. Missouri,* 544 U.S. 622, 125 S.Ct. 2007, 161 L.Ed.2d 953 (2005)(a defendant need not demonstrate actual prejudice to allege a due process violation when the court, without adequate justification, orders the defendant to wear shackles that will be seen by the jury); *see also Riggins v. Nevada,* 504 U.S. 127, 112 S.Ct. 1810, 118 L.Ed.2d 479 (1992) (actual prejudice need not be shown when defendant was subjected to forcible administration of antipsychotic drugs during trial); *Hale v. Gibson,* 227 F.3d 1298 (10th Cir.2000)(a habeas petitioner alleging that denial of a change of venue violated his due process rights must show either that the ruling resulted in actual prejudice or that it gave rise to a presumption of prejudice).

In the end, "[f]airness requires more than the elimination of actual prejudice," and "[t]he conduct of justice must not only achieve the reality of fairness, [but] it must also 'satisfy the appearance of justice.'" *People v. Rhodus,* 870 P.2d 470, 473 (Colo.1994)(quoting *People v. Macrander,* 828 P.2d 234, 238 (Colo.1992), and *In re Murchison,* 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955)). Forcing a parent to file a petition on appeal without access to a transcript of any kind, as in this case, satisfies neither actual justice nor the appearance of justice.

Moreover, the authority that the majority cites for the proposition that mother must demonstrate harm or prejudice in an as-applied due process challenge either does not support its position or is inapposite here. For example, in *People v. Rodriguez,* 914 P.2d 230 (Colo.1996), the Colorado Supreme Court recognized that a criminal defendant is entitled to an appellate record which includes a complete transcript. The supreme court concluded, however, the incompleteness of

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2005.

the record in that case did not amount to actual or constructive denial of counsel for which prejudice would be presumed because Rodriguez was able to file a 138–page appellate brief with 102 issues. *In re Smith,* 989 P.2d 165 (Colo.1999), involved a delay in disciplinary proceedings in which the party to be disciplined was predominately at fault. The division in *People in Interest of A.L.B.,* 994 P.2d 476 (Colo.App.1999), held that the father's inability to compel testimony from the adoptive parents did not violate his due process rights because he was able extensively to cross-examine the guardian ad litem, who concluded that the adoptive parents were fit.

Here, the petition on appeal is the *only* pleading that parents are currently entitled to file under C.A.R. 3.4. Therefore, the risk of error without access to a transcript is high because parents challenging an order terminating their parental rights have the burden to identify issues in their petitions. *See* C.A.R. 1(d). A transcript is essential to identify issues on appeal affecting fundamental rights, including the right of parents to retain custody of their children.

In my view, the procedure employed by the state under C.A.R. 3.4 involves such a probability of resulting prejudice that it may be deemed inherently lacking in due process under United States Supreme Court authority. Therefore, I believe we must consider whether C.A.R. 3.4 violates mother's due process rights irrespective of a showing of actual prejudice. *See Estes v. Texas, supra; People v. Rhodus, supra.*

## I. Purpose of C.A.R. 3.4

Congress, through the Adoption and Safe Families Act of 1997, mandates that children must have a permanent home within twelve months of entering foster care. 42 U.S.C. § 675(5)(C). The Colorado General Assembly has recognized the federal requirement that each state make reasonable efforts to prevent the removal of children from their home and "to reunify the family whenever appropriate." Section 19–3–100.5(1), C.R.S. 2005. The General Assembly therefore mandates that courts "proceed with all possible speed to a legal determination that will serve the best interests of the child." Section 19–1–102(1)(c), C.R.S.2005.

C.A.R. 3.4 was adopted to expedite appeals in dependency and neglect proceedings. *See* § 19–1–102(1.6), C.R.S.2005. In furtherance of this purpose, the rule provides for the simultaneous filing of the record on appeal and the petition on appeal and allows parents access to an unedited transcript when preparing their petitions. C.A.R. 3.4(e)(6), (g)(1), (h)(1).

## II. Standard of Review: Strict Scrutiny

When an issue involves state action that intrudes upon or deprives a citizen of a fundamental right, the court must review the challenged action under a strict scrutiny standard. *M.L.B. v. S.L.J.,* 519 U.S. 102, 117 S.Ct. 555, 136 L.Ed.2d 473 (1996).

Freedom of personal choice in family matters constitutes a fundamental liberty interest protected by the Fourteenth Amendment of the United States Constitution. *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *People in Interest of E.I.C.,* 958 P.2d 511 (Colo.App.1998).

"Even when blood relationships are strained, parents retain a vital interest in preventing the irretrievable destruction of their family life" and have a "critical need for procedural protections." *Santosky v. Kramer, supra,* 455 U.S. at 753, 102 S.Ct. at 1395. The Constitution does not permit us to view mother's considerable problems without regard to her procedural rights. To the contrary, when the state "moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures." *Santosky v. Kramer, supra,* 455 U.S. at 753–54, 102 S.Ct. at 1395.

## III. Due Process Generally

Under a strict scrutiny standard, a legislative enactment that infringes on a fundamental right or that burdens a suspect class is constitutionally permissible only if it is necessary to promote a compelling state interest and does so in the least restrictive manner possible. *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Evans v. Romer,* 882 P.2d 1335 (Colo.1994), *aff'd,* 517

U.S. 620, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996).

The court must weigh the private interests at stake, the government's interest, and the risk that the procedures used will lead to an erroneous decision. *Mathews v. Eldridge, supra; C.S. v. People,* 83 P.3d 627 (Colo. 2004). The state has the burden of establishing that a restriction affecting a fundamental right is necessarily related to a compelling interest. *MacGuire v. Houston,* 717 P.2d 948 (Colo.1986).

The protected interests in a parental rights termination proceeding include (1) the interests of the parent and child in continuing a family relationship; (2) the interests of the parent in preserving the integrity and privacy of the family unit; (3) the interest of the child in a permanent, secure, stable, and loving environment; and (4) the interests of the state in protecting the child. *People in Interest of C.A.K.,* 652 P.2d 603 (Colo.1982).

In considering the termination of the parent-child relationship, the court shall give primary consideration to the physical, mental, and emotional conditions and needs of the child. Section 19–3–604(3), C.R.S.2005. If the parent-child relationship is terminated, the child forever loses the right of support and maintenance, the right to inherit, and all other rights inherent in the legal relationship. *Santosky v. Kramer, supra.*

Certainly, parents' desire for and their right to the companionship, care, custody, and management of their children warrants deference and protection, absent a powerful countervailing interest. The object of a termination proceeding does not simply infringe on the parents' right but ends it. Thus, the parents' interest in the accuracy and justice of the termination decision is a commanding one. *Lassiter v. Dep't of Soc. Servs.,* 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981); *People in Interest of E.A.,* 638 P.2d 278 (Colo.1981)(the state's power to sever parental ties should be exercised with extreme caution).

However, the state unquestionably has a compelling interest in assuring that children are not neglected or dependent and that they are provided with a stable home atmosphere in which they may progress physically, intellectually, and emotionally. When parents cannot provide such a home to their children within a reasonable period, the state's compelling interest in the welfare of the children justifies the termination of the parents' rights. *People in Interest of E.I.C., supra.*

## IV. Constitutionality of C.A.R. 3.4

In this case I conclude that C.A.R. 3.4 is unconstitutional as applied. *See E–470 Pub. Highway Auth. v. Revenig,* 91 P.3d 1038 (Colo.2004)(facially constitutional statute may be unconstitutional as applied); *see also Troxel v. Granville,* 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000)(holding parental visitation statute unconstitutional as applied because trial court applied an invalid presumption against a fit parent's decision regarding the best interests of her children).

Here, mother's counsel "contacted both court reporters immediately after the hearing to request a transcript," but the "transcripts were not ready as promised." Thus, mother was forced to file her petition on appeal without the benefit of *any* transcript, unedited or otherwise. *Cf. People in Interest of T.D.,* —— P.3d ——, ——, 2006 WL 1224935 (Colo.App. No. 05CA0731, Mar. 9, 2006)(the new rule protects against the risk of erroneous deprivation "by allowing appellate counsel for the parents a reasonable opportunity to review an unedited transcript and to raise possible issues for appeal").

Without citing any authority, the majority asserts that mother is not entitled to any relief because "the official transcript has long since been available for review, but mother has at no time attempted to amend the issues raised in her petition or to urge new grounds for reversal of the judgments."

I read the majority's opinion as holding that no due process violation exists because mother had access to the transcript after her petition on appeal was due. However, this position is untenable in light of analogous United States Supreme Court authority involving indigent parents' rights to transcripts of court proceedings. Specifically, due process requires the state provide indigent parents a sufficiently complete record to permit proper appellate review of an order terminat-

ing parental rights. *M.L.B. v. S.L.J., supra,* 519 U.S. at 123, 117 S.Ct. at 567 ("It would be anomalous to recognize a right to a transcript needed to appeal a misdemeanor conviction ... but hold, at the same time, that a transcript need not be prepared for [the parent in a termination proceeding] ....").

Indeed, § 19-3-609(2), C.R.S.2005, requires that, upon the request of indigent parents, a transcript of the trial proceeding must be provided at state expense. *People in Interest of M.N.,* 950 P.2d 674 (Colo.App. 1997). This requirement is hollow if the parents do not have a copy of the transcript when their petition on appeal is due.

Although the Supreme Court in *M.L.B. v. S.L.J.* could have rested on the same argument as the majority does here—namely, that the indigent parents had access to the complete record by going to the courthouse and reviewing it—the Supreme Court held instead that due process requires the state to provide indigent parents a sufficiently complete record to permit appellate review of an order terminating parental rights. In my view, due process requires the state to provide parents with a transcript before requiring them to file their petitions on appeal. It does not mean telling parents under C.A.R. 3.4 that they have access to the transcripts at the courthouse once they become available.

Nor am I persuaded that the error can be cured by this court's review of the record and the majority's conclusion that our "review of the official transcript has demonstrated that the substantive issues raised by mother" seemingly entitled her to no relief. Mother's counsel may or may not have identified and raised additional and meritorious issues had she access to a transcript when preparing the petition on appeal. The advocate's role is to cull the record and make the best argument for his or her client, and to do so with the benefit of a transcript.

Although this court may conduct an independent review of the record and transcripts to search for issues not raised by counsel or to construct arguments to support identified issues, I believe this practice violates the neutrality and independence of the court. *See Air Commc'n & Satellite Inc. v. EchoStar Satellite Corp.,* 38 P.3d 1246 (Colo. 2002)(the court is a neutral arbiter, while counsel acts in an adversarial capacity); *see also People v. Romero,* 694 P.2d 1256 (Colo. 1985)(the court's role is that of an independent arbiter). Because the court is an independent arbiter rather than an advocate for mother, it is unreasonable to expect the court fully to litigate and safeguard mother's constitutional rights.

Further, C.A.R. 3.4 contemplates an expedited process in which this court can verify the factual statements and legal authority advanced by parties in their petitions on appeal. But this verification process cannot serve as a substitute for effective representation by counsel. *See* C.A.R. 3.4(j)(2); *Air Commc'n & Satellite Inc. v. EchoStar Satellite Corp., supra; People v. Romero, supra.* It infringes on mother's rights in a manner that is not the least restrictive possible. *See Mathews v. Eldridge, supra; Evans v. Romer, supra.*

In summary, I conclude the risk that the expedited process under C.A.R. 3.4 will lead to an erroneous decision is too high to justify the termination of parental rights here. *See Mathews v. Eldridge, supra; C.S. v. People, supra.* I further conclude the state has not provided mother with fundamentally fair procedures as constitutionally required, *see Santosky v. Kramer, supra,* and the procedure employed involves such a probability of prejudice that it is inherently lacking in due process and does not satisfy actual justice or the appearance of justice. *See Estes v. Texas, supra; People v. Rhodus, supra.*

Accordingly, I would conclude that mother's due process rights were violated because she did not have access to a transcript when preparing her petition on appeal.