The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
July 25, 2019

**2019COA112**

**No. 17CA1665, *Adoption of S.S.A.R.* — Family Law — Juvenile Court — Relinquishment and Adoption — Kinship Adoption; Constitutional Law — Due Process — Right to Counsel**

In this kinship adoption case, a division of the court of appeals concludes, as a matter of first impression, that the factors set forth in *Mathews v. Elridge*, 424 U.S. 319 (1976), should be applied to determine whether a parent should be appointed counsel in the termination of parental rights proceeding. After applying those factors to the facts of this case, the division vacates the judgment terminating father's parental rights and remands the case for further proceedings.

COLORADO COURT OF APPEALS     **2019COA112**

Court of Appeals No. 17CA1665
Mesa County District Court No. 17JA70
Honorable Gretchen B. Larson, Judge

In re the Petition of R.L.S.,

Appellant,

for the Adoption of S.S.A.R., a Child,

and Concerning K.L.R., Sr., and S.M.R.,

Appellees.

JUDGMENT VACATED AND CASE
REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE FREYRE
Fox and Welling, JJ., concur

Announced July 25, 2019

Brad Junge, Office of Respondent Parents' Counsel, Grand Junction, Colorado, for Appellant

Susan E. Eggert, PC, Susan E. Eggert, Grand Junction, Colorado, for Appellees

¶ 1     In this kinship adoption proceeding, R.L.S. (father) appeals the judgment terminating his parental rights to S.S.A.R. (child) and decreeing the child's adoption by K.L.R., Sr., and S.M.R. (aunt and uncle). Father contends that he was denied his right to counsel because he was incarcerated out-of-state and had no ability to participate in the proceedings.

¶ 2     As a matter of first impression, and under the circumstances presented, we conclude that in determining whether a parent is entitled to appointed counsel requires application of the *Mathews v. Elridge*, 424 U.S. 319, 334-45 (1976), factors and, we also conclude that the judgment terminating father's parental rights is void because the court entered it in violation of his due process right to appointed counsel. Consequently, we vacate the judgment terminating father's parental rights and decreeing the child's adoption and remand the case to the juvenile court for a new hearing. If the court finds that father is still indigent, it must appoint counsel.

## I.  Background

¶ 3     The child's maternal aunt and uncle filed petitions for kinship adoption and to terminate father's parental rights. The child's

1

mother was deceased, and father was incarcerated at the Clark County Detention Center in Las Vegas, Nevada. A court previously appointed the aunt and uncle guardians for the child in Utah.

¶ 4 Father, who was not represented by counsel, objected, via written correspondence, to the adoption and requested the appointment of a guardian ad litem (GAL) for the child. The court took no action on father's request for a GAL because father did not appear at the termination and adoption hearing. After a brief hearing, the court terminated father's parental rights and entered a final decree of adoption. Father then filed a motion for reconsideration that argued, in part, that (1) the juvenile court abused its discretion in failing to appoint a GAL and (2) fundamental due process required that he have legal representation during the proceeding.

¶ 5 Father, who was still incarcerated and appearing pro se, then filed a notice of appeal and a motion for the appointment of counsel in this court. As a result, the juvenile court took no action on father's motion for reconsideration. We ordered a limited remand to the juvenile court for the purpose of hearing and ruling on father's motion for counsel. The juvenile court held a hearing and

concluded that it would have appointed counsel for father had he requested it during the pendency of the case. We then granted father's motion for appointment of counsel for the purposes of appeal.

## II. Right to Counsel

### A. Legal Framework

¶ 6     The parental right to raise one's child is a fundamental liberty interest protected by the Due Process Clause of the Fourteenth Amendment. *See Santosky v. Kramer*, 455 U.S. 745 (1972); *see also Stanley v. Illinois*, 405 U.S. 645, 651 (1972). The Supreme Court has noted that "the interest of parents in the care, custody, and control of their children . . . is perhaps the oldest of the fundamental liberty interests recognized by this Court." *Troxel v. Granville*, 530 U.S. 57, 65 (2000).

¶ 7     Because this right is fundamental, certain due process requirements must be met before it may be extinguished in involuntary child-custody proceedings. *See L.L. v. People*, 10 P.3d 1271, 1276 (Colo. 2000). Due process, however, is flexible and calls only for such procedural protections as the situation demands. *A.M. v. A.C.*, 2013 CO 16, ¶ 28. Because due process is

3

situation-specific, it should be viewed in the context of all the procedural protections offered to parents. *Id.* at ¶¶ 28-29.

¶ 8        In *Lassiter v. Department of Social Services*, 452 U.S. 18 (1981), the United States Supreme Court held that the Due Process Clause does not require "the appointment of counsel in every parental termination proceeding." *Id.* at 31.  After reviewing its precedents on the right to appointed counsel, the Court identified a "presumption that an indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived of his physical liberty." *Id.* at 26-27.

¶ 9        Accordingly, because in termination proceedings the parent's personal liberty is not at stake, the presumption against a right to appointed counsel is weighed against the sum total of the "three elements to be evaluated in deciding what [procedural] due process requires, viz., the private interests at stake, the government's interest, and the risk that the procedures used will lead to erroneous decisions." *Id.* at 27.  The Supreme Court formulated these three elements in *Eldridge*, 424 U.S. at 334-35, and they are now commonly referred to as the *Eldridge* factors.

¶ 10    In *Lassiter*, the Supreme Court concluded that while in some termination proceedings the *Eldridge* factors could be weighted in such a manner that their sum total was greater than the presumption against the right to appointed counsel, this would not always be the case.  *Lassiter*, 452 U.S. at 31-32.  Therefore, rather than require that counsel be provided in all such cases, the Supreme Court held that the determination must be made on a case-by-case basis.  *Id.* at 26.

¶ 11    In Colorado, an indigent parent has a statutory right to court-appointed counsel in dependency and neglect proceedings. § 19-3-202(1), C.R.S. 2018; *People in Interest of L.A.C.*, 97 P.3d 363, 367 (Colo. App. 2004).  However, no such right exists in kinship adoption proceedings.  Colorado appellate courts have followed *Lassiter* and adopted the *Eldridge* factors in examining the due process right to counsel in stepparent adoption cases, *In re C.A.O.*, 192 P.3d 508, 510-12 (Colo. App. 2008), and relinquishment proceedings.  *In re R.A.M.,* 2014 COA 68, ¶ 35.  And, other jurisdictions have recognized a right to counsel in adoption proceedings.  *See e.g., In re Fernandez,* 399 N.W.2d 459, 461 (Mich. Ct. App. 1986) (" While we are not willing at this point to create a

rule which would require that probate courts must, in all cases, consider sua sponte the appointment of trial counsel in proceedings under the Adoption Code involving the termination of parental rights, we conclude that, given respondent's stated desire for counsel and his lack of funds, coupled with his inability to freely appear before the probate court and attend to the litigation, the trial court should have considered respondent's communications as a request for the appointment of trial counsel."); *In re Adoption of A.W.S.*, 339 P.3d 414, 418 (Mont. 2014) ("although Mother did not request counsel formally, we have recognized that pro se litigants are not required to use specific words when requesting counsel."). Therefore, we apply the *Eldridge* factors in reviewing this termination proceeding under the kinship adoption statute.

## B. Request for Counsel

¶ 12 The aunt and uncle contend that a parent must invoke the right to counsel and that father failed to do so. We are not persuaded.

¶ 13 In *R.A.M.*, a division of this court held that a request for counsel under the Due Process Clause does not require a formal

6

request using specific words. *Id.* at ¶ 27. The mother voluntarily relinquished custody of her child to an adoption agency and the court terminated the father's parental rights under section 19-5-105(3), C.R.S. 2018. The father, who was in custody, appeared at the termination proceeding and indicated that (1) he was not prepared to proceed; (2) he had thought he would no longer be incarcerated and would have an attorney for the hearing; and (3) he did not understand his rights. *R.A.M.*, ¶ 6.

¶ 14     The court did not rule on his request to continue the hearing. Nor did it ask father whether he wanted or could afford counsel. *Id.* at ¶ 7. The division held that the father made an adequate request for counsel and, using a *Lassiter* analysis, had a due process right to the appointment of counsel. *Id.* at ¶¶ 33, 38.

¶ 15     In this case, father did not expressly request counsel. Still, in his petition to appoint a GAL, father indicated that he was (1) a pretrial detainee; (2) indigent; and (3) unable to afford court costs associated with the case. He further stated that if he "was not incarcerated . . . he would have much greater ability to assure a full evaluation would be made and even compel discovery in a contested matter." He said he "figuratively and literally has his hands tied."

7

¶ 16     Although father did not formally request counsel, we conclude that given his incarceration, indigency, and inability to freely appear before the court and attend to the litigation, the juvenile court should have considered father's communications as a request for the appointment of trial counsel or, at the very least, asked if father wanted counsel.

## C.  Right to Counsel

¶ 17     We now examine the *Eldridge* factors in the context of this case and conclude that father had a due process right to counsel.

¶ 18     In reviewing a parent's due process right to counsel, a court must consider (1) whether the parent's interest is extremely important; (2) whether the state shares with the parent an interest in a correct decision and has a relatively weak pecuniary interest; and (3) whether the complexity of the proceeding and the incapacity of the uncounseled parent could be great enough to make the risk of an erroneous deprivation of the parent's rights unacceptably high.  *C.S. v. People in Interest of I.S.*, 83 P.3d 627, 636 (Colo. 2004) (citing *Lassiter*, 452 U.S. at 31).  In other words, "due process requires the appointment of counsel only where the parent's interests are at [thei]r strongest, where the state's interests are at

8

their weakest, and the risks of error are at their peak." *Id.* at 636-67.

¶ 19 To assess the risk of an erroneous decision, the Court in *Lassiter* listed several factors that bear on this question: (1) the possibility of self-incrimination; (2) whether expert testimony is presented at the hearing; (3) whether the decision involves complex points of law; and (4) the sufficiency of the evidence. *Lassiter*, 452 U.S. at 32-33.

### 1. Father's Interests

¶ 20 First, we consider father's private interest. Because he had an important interest in the companionship, care, custody, and management of his child, he had a substantial interest in the accuracy of the termination proceeding. *See L.L.*, 10 P.3d at 1275-76. Given that father was incarcerated on criminal pretrial matters, he also faced some risk of self-incrimination. Accordingly, we conclude that father's interests were at their strongest or very nearly so.

### 2. State's Interests

¶ 21 Second, we consider the strength of the State's interests in not appointing counsel. The State, of course, had a legitimate

pecuniary interest in not appointing counsel, but, as in *Lassiter*, we conclude that that interest is hardly significant enough to overcome an interest as important as a parent's rights to his or her child. Here, the State's interest in terminating father's parental rights was certainly less urgent than it was in *Lassiter* because this proceeding was initiated and advanced by a private party rather than by the State. Regardless, the State still had an interest in the welfare of the child, and still "share[d] with the parent an interest in a correct decision," which is more "likely to be obtained through the equal contest of opposed interests." *Lassiter*, 452 U.S. at 28, 31. Therefore, we conclude that the State's interests in not appointing counsel were quite weak, if not at their weakest.

### 3. Risk of Error

¶ 22 Third, we consider whether the risks of error were at their peak. Specifically, we consider "the risk that a parent will be erroneously deprived of his or her child because the parent is not represented by counsel." *Id.* at 28.

¶ 23 Parents are provided an array of protections in state-initiated dependency and neglect termination proceedings. These include:

- notice, § 19-3-602(1), C.R.S. 2018;

10

- right to a separate hearing, *id.*;

- appointment of counsel if indigent, § 19-3-202(1);

- appointment of an expert if indigent, § 19-3-607(1), C.R.S. 2018;

- appointment of a guardian ad litem, § 19-3-602(3);

- right to cross-examine adverse parties and call witnesses, *A.M.*, ¶ 29; and

- the juvenile court's consideration and elimination of less drastic alternatives to terminating parental rights, *People in Interest of M.M.*, 726 P.2d 1108, 1123 (Colo. 1986).

¶ 24    However, Colorado law provides few procedural protections in kinship adoption proceedings.  Under section 19-5-203(1)(j), C.R.S. 2018 — the kinship adoption statute — a child is available for adoption upon (1) submission of an affidavit or sworn testimony of the adoptive relative that the birth parents have abandoned the child for a period of one year or more or (2) the birth parents have failed without cause to provide reasonable support for the child for a period of one year or more.  As well, the relative seeking the kinship adoption must have had physical custody of the child for one year or more and the child must not be subject to a pending

11

dependency and neglect proceeding. *Id.* And, once a petition for adoption is filed, the court only needs to provide notice to the birth parents and hold the hearing no sooner than thirty-five days after service of the notice is complete. Then it may enter the termination order and adoption decree after only a single hearing. *Id.*

¶ 25 Given the lack of protections in kinship adoption proceedings, there is considerable risk of error that can be further compounded for the parent seeking to defend his or her parental rights without the assistance of counsel.

¶ 26 In this case, the risks of error were significant. Because this case involves privately initiated termination proceedings, father did not enjoy the additional protections provided in state-initiated termination cases. Furthermore, father was incarcerated out-of-state throughout the proceedings. The record shows that this led to difficulties, if not a complete inability, to research Colorado law or to attend proceedings in person or telephonically. He was not able to present his own evidence or subject the aunt and uncle's evidence to cross-examination. While no expert testimony or complicated evidence was brought before the court, it is possible that, had father been represented by counsel, such

testimony may have been presented. It is also difficult to conclude that the case was simple and uncomplicated given father's allegations that the aunt and uncle had previously abused and neglected children in their care, and his request that a GAL independently investigate the child's best interests.

¶ 27 Based on our application of the *Lassiter* test, we conclude that the presumption against the right to counsel was overcome in this case and that father had a due process right to counsel. We therefore vacate the judgment terminating father's parental rights.

## III. Appointment of a GAL

¶ 28 Because it may arise on remand, we address father's contention that the juvenile court abused its discretion when it failed to appoint a GAL. He argues that the court erred in not making factual findings on whether the appointment of a GAL was in the child's best interest.

¶ 29 Father requested the appointment of a GAL to make a "full investigation into child abuse and neglect" by the aunt and uncle. He alleged substance abuse in their home and argued that a guardianship or adoption by the child's adult sister would be in the child's best interest. As previously stated, the juvenile court never

ruled on the motion because father did not appear at the termination and adoption proceeding.

¶ 30    A GAL is "a person appointed by a court to act in the best interests of a person whom the person appointed is representing in proceedings under [the Children's Code]." § 19-1-103(59), C.R.S. 2018.  Section 19-1-111, C.R.S. 2018, mandates the appointment of a GAL in dependency and neglect cases, and section 19-5-103(9)(a), C.R.S. 2018, permits the juvenile court to appoint a GAL under the relinquishment statute under certain circumstances.  However, the Children's Code is silent about the appointment of a GAL in kinship adoption proceedings under section 19-5-203.

¶ 31    Citing *People in Interest of A.L.B.*, 994 P.2d 476 (Colo. App. 1999), aunt and uncle respond that the failure to appoint a GAL was harmless because the evidence was overwhelming that father's parental rights should be terminated and the appointment of a GAL would not have changed the outcome.  We disagree, concluding that their reliance on *A.L.B.* is misguided.  In *A.L.B.*, the GAL completed an independent investigation and presented his opinions to the court, and the father was able to examine the GAL during the

termination hearing. *Id.* at 480. On appeal, the father argued that his due process rights were violated because he could not call the potential adoptive parents as witnesses even though the GAL presented extensive information about them. A division of this court held that father failed to demonstrate how the lack of direct testimony from the adoptive parents was prejudicial. *Id.* That case does not discuss how the lack of appointment of a GAL was harmless.

¶ 32     We also disagree with the aunt and uncle's assertion that father waived his right to the appointment of a GAL because he failed to cite legal authority in his motion, obtain a ruling, or request a continuance to obtain a ruling. They argue that father, as a result, abandoned the motion.

¶ 33     As discussed above, father was unrepresented and indigent, lacked access to legal resources, and lacked the ability to appear in person at the proceedings. The juvenile court denied his request simply because he did not appear in court, which should have been of no surprise to the juvenile court as it knew that father was in custody out-of-state and not represented by counsel. Further, no statutes or case law directs a court to dismiss a motion for the

15

appointment of a GAL solely because the requesting party failed to appear.

¶ 34 Under these circumstances, we conclude that father did not waive his request for a GAL. Although the appointment of a GAL is not statutorily required, nothing prohibits such appointment should a parent fail to appear. On remand, should father or another party request the appointment of a GAL, the juvenile court is directed to make findings as to whether such appointment is in the child's best interest and, if not, why.

## IV. Remaining Issues

¶ 35 Because we vacate the judgment and remand the case for further proceedings, we need not address father's contention that the juvenile court failed to make sufficient findings terminating his parental rights and granting the adoption decree.

## V. Conclusion

¶ 36 We vacate the order terminating father's parental rights and remand the case for further proceedings. On remand, the court shall determine whether father is currently indigent and appoint counsel for him as necessary.

JUDGE FOX and JUDGE WELLING concur.

16