502 P.2d 92 (1972)
In re the PEOPLE of the State of Colorado, Petitioner-Appellee, in the Interest of A. R. S., a child.
The PEOPLE of the State of Colorado, Petitioner-Appellee,
v.
R. A. S. and G. S., Respondents-Appellants.
No. 71-456.
Colorado Court of Appeals, Div. II.
August 29, 1972.
Rehearing Denied September 19, 1972.
Certiorari Denied November 13, 1972.
*93 Joyce K. Herr, County Atty., Jefferson County, Golden, for petitioner-appellee.
Carol Van Pelt, Lakewood, for respondents-appellants.
Selected for Official Publication.
PIERCE, Judge.
In May 1968, the Jefferson County Department of Public Welfare filed a petition seeking to have A.R.S., a minor child, adjudicated dependent and neglected and asking for termination of all rights of her parents. By court order of June 16, 1969, A.R.S. was adjudicated to be neglected and dependent. At the dispositional hearing, the court adopted a stipulation of the respondent parents and the petitioner department, placing A.R.S. in the legal custody of the Department, with physical custody in her aunt and uncle. In that stipulation, the Welfare Department expressly reserved the right to petition the court for termination of parental rights at a later date if the Department "honestly" believed that a change in the circumstances so dictated. The court also reserved the right to reconsider the matter.
Subsequently, the Welfare Department sought permanent termination of the natural parents' rights. After a series of hearings, the court entered an order on July 8, 1971, terminating all rights in the natural parents. The evidence at those hearings developed proof of the chronic sociopathic nature of both parents. The evidence further showed that the experimental placement of A.R.S. in the home of her aunt and uncle had not been successful and that she had been unable to find stability in a foster home where she had subsequently been placed. The parents appeal from that order.

I.
Their first contention is that, in the absence of proof of change of circumstances as to the stability of the child or the parents, the court, because of the stipulation incorporated in the original order, was without power to terminate the parents' rights.
The Colorado Children's Code, 1967 Perm.Supp., C.R.S.1963, 22-3-11, provides that it is the paramount duty of the court, in determining whether to terminate the rights of parents in a neglected and dependent child, to consider above all else the welfare of the child.
The public policy of this state is clearly set forth in the Colorado Children's Code, which states:
"(1) (a) The general assembly hereby declares that the purposes of this chapter are:
(b) To secure for each child, subject to these provisions, such care and guidance, preferably in his own home, as will best serve his welfare and the interests of society;

*94 (c) To preserve and strengthen family ties whenever possible, including improvement of home environment;
(d) To remove a child from the custody of his parents only when his welfare and safety or protection of the public would otherwise be endangered; and
(e) To secure for any child removed from the custody of his parents the necessary care, guidance, and discipline to assist him in becoming a responsible and productive member of society.
(2) To carry out these purposes, the provisions of this chapter shall be liberally construed." 1967 Perm.Supp., C. R.S.1963, 22-1-2.
We hold, that, under the Code, parties are precluded from stipulating any restrictions upon the court's duty to protect the best interests of a child. This has been the rule in other types of custody actions. See Feist v. Feist, 236 Cal.App.2d 433, 46 Cal.Rptr. 93; Application of Holland, 2 App.Div.2d 987, 157 N.Y.S.2d 623. Furthermore, courts are not bound by stipulations as to the law. In re Estate of Maguire, 204 Kan. 686, 466 P.2d 358; American Bankers Insurance Co. v. Black, 466 S.W.2d 616 (Tex.Civ.App.).
Thus, although there was no specific finding of change of circumstances, the evidence showed clearly that the attempted resolution of this child's problems under the previous order had failed completely, and where there was competent and substantial evidence supporting the trial court's determination that it was in the best interests of the child to terminate parental rights, we will not interfere.

II.
The parents next claim that the trial court erred in denying them a free transcript of the proceedings to aid in the preparation of their motion for new trial. We disagree.
In the absence of a statute authorizing the furnishing of such a transcript, we hold that counsel is not entitled to a copy for preparation of a motion for new trial. State ex rel. Macon v. Orange Circuit Court, 245 Ind. 269, 198 N.E.2d 229, cert. denied, 380 U.S. 981, 85 S.Ct. 1345, 14 L.Ed.2d 274; People v. Putty, 251 Cal. App.2d 991, 59 Cal.Rptr. 881. While these cases involve criminal actions, we find the general proposition contained therein to be equally applicable in a civil case.

III.
The parents also contend that certain social reports and other evidence considered by the trial court were inadmissible and prejudicial. With regard to the social reports, two theories are offered to support this contention. First, it is alleged that they are comprised of hearsay, inasmuch as some people who contributed to the information therein were not available for cross-examination at trial; and second, it is claimed that the authors of these documents were not qualified to reach the conclusions therein. Again, we disagree.
The Children's Code provides that hearings are to be conducted in an informal manner. 1967 Perm.Supp., C.R.S.1963, 22-1-7. It further provides that the judge is to receive and consider social study and other reports. 1967 Perm.Supp., C.R.S.1963, 22-1-8 and 1967 Perm.Supp., C.R.S.1963, 22-3-9. Because of the statutory authorization, the common-law hearsay objections as to the admissibility of such reports are not applicable. The problem then becomes one of satisfying the requirements of due process as to their use.
The due process safeguard is provided by 1967 Perm.Supp., C.R.S.1963, 22-1-8, which states that the author of the report can be compelled to attend the hearing and be subject to cross-examination. Here, the parents obtained the attendance of the authors of the disputed reports at the hearing and cross-examined each of them.
*95 The situation here is closely analogous to that occurring in divorce cases involving child custody where similar reports from welfare and probation departments are presented to the trial court. The Colorado Supreme Court considered the due process issue as regards such reports in divorce actions in Aylor v. Aylor, 173 Colo. 294, 478 P.2d 302. In interpreting 1969 Perm.Supp., C.R.S.1963, 46-1-5(7), which statute concerns itself with this type of report and the purposes for which such reports are to be used in divorce cases, the court, in Aylor, held that admission of such reports do not deny the parties due process where, as here, the parties are allowed to confront the authors of the reports.
The parents argue, however, that cross-examination developed that the authors of the reports could not state that each and every item reported therein was within their own personal knowledge and that, therefore, the reports were based upon hearsay. They further argue that the authors of the reports were not qualified as experts and that thus the reports are inadmissible. Where the statute authorizes consideration of the reports, the fact that they may contain hearsay or are prepared by non-experts becomes a matter concerning their weight and probative value and not their admissibility.
We find no merit in the other points of error raised with regard to the evidence admitted. Where, as here, trial is to the court, rather than a jury, we must presume that the trial court disregarded any immaterial, incompetent or hearsay evidence that may have been introduced. Bill Dreiling Motor Co. v. Travelers Indemnity Co., 29 Colo.App. 163, 482 P.2d 999.
We have considered the parents' other contentions of error and find them to be without merit.
Judgment affirmed.
COYTE and ENOCH, JJ., concur.