97 P.3d 363 (2004)
The PEOPLE of the State of Colorado, In the Interest of L.A.C. and J.M.C., Children,
Upon the Petition of the La Plata County Department of Human Services, Petitioner-Appellee, and
Concerning T.R., Respondent-Appellant.
No. 03CA1012.
Colorado Court of Appeals, Div. V.
July 15, 2004.
*365 Michael Andrew Goldman, County Attorney, Linda L. Boulder, Special County Attorney, Durango, Colorado, for Petitioner-Appellee.
Richard L. Emmett, Durango, Colorado, for Respondent-Appellant.
Opinion by Judge NIETO.
T.R. (mother) appeals from a judgment terminating the parent-child legal relationship between her and her children, L.A.C. and J.M.C. We affirm.

I.
Mother contends the trial court erred in failing to appoint a guardian ad litem (GAL) for her. She argues that a GAL was necessary to protect her interests because of her age, her limited intellectual ability, and her emotional and mental condition. We find no error.
Mother was eighteen years old when the petition in dependency and neglect was filed and almost twenty years old at the time of the termination hearing.

A.
A GAL must be appointed to represent a respondent parent who is a "minor" in any hearing to determine the involuntary termination of the parent-child legal relationship. *366 Section 19-3-602(3), C.R.S.2003; see People in Interest of M.M., 726 P.2d 1108 (Colo.1986).
"`Minor' means any person who has not attained the age of twenty-one years. No construction of this subsection (6) shall supersede the express language of any statute." Section 2-4-401(6), C.R.S.2003. This definition is applicable to every Colorado statute, "unless the context otherwise requires." Section 2-4-401, C.R.S.2003.
The Colorado Children's Code, § 19-1-101, et seq., C.R.S.2003 (the Code), does not include an express definition of "minor." However, it defines a child as "a person under eighteen years of age" and an adult as "a person eighteen years of age or older." Section 19-1-103(8)(a), (18), C.R.S.2003; People in Interest of H., 74 P.3d 494 (Colo.App.2003).
Section 13-22-101, C.R.S.2003, defines the age of competency for certain specific purposes:
(1) ... [E]very person, otherwise competent, shall be deemed to be of full age at the age of eighteen years or older for the following specific purposes:
...
(c) To sue and be sued in any action to the full extent as any other adult person in any of the courts of this state, without the necessity for a guardian ad litem or someone acting in his behalf;
(d) To make decisions in regard to his own body and the body of his issue, whether natural or adopted by such person, to the full extend allowed to any other adult person.
(Emphasis added.)
Thus, unless the definition of "minor" in § 2-4-401(6) applies, a person eighteen years of age or older can be named as a respondent and be sued in a parental rights termination action without the necessity for a GAL and, in such a case, that person has the right to make decisions concerning his or her children.
Consistent with § 13-22-101 and the definition of an adult in the Code, a person eighteen years of age or older can be sued in a parental rights termination action and can make decisions concerning his or her child in such an action. Defining "minor" in § 19-3-602(3) as a person under the age of twenty-one years would be inconsistent with § 13-22-101 and the definitions of "child" and "adult" in the Code. Therefore, the context of § 19-3-602(3) requires that "minor" be defined as a person under eighteen years of age. Accordingly, we conclude that the definition of a "minor" in § 2-4-401(6) is not applicable in § 19-3-602(3) because "the context otherwise requires." Therefore, the trial court was not required to appoint a GAL for mother who was over the age of eighteen years.

B.
In dependency and neglect proceedings, a GAL may also be appointed for a parent "who has been determined to be mentally ill or developmentally disabled by a court of competent jurisdiction." Section 19-1-111(2)(c), C.R.S.2003. The decision whether to appoint a GAL for a parent under § 19-1-111(2)(c) lies within the discretion of the trial court. See People in Interest of M.M., supra.
The record here reveals that mother's counsel was aware of her emotional and mental condition and her limited intellectual ability at the time of his appointment. He did not, however, suggest the appointment of a GAL until his closing argument.
The trial court rejected counsel's argument, finding that mother understood the proceedings. This finding was based on mother's demeanor during the proceedings, her ability to articulate, and her psychological evaluation, which revealed that mother functioned on a higher level than suggested by her test scores, had good communication and memory skills, and recognized the purpose of the evaluation. Because these findings are supported by the record, we perceive no abuse of discretion in the trial court's refusal to appoint a GAL under § 19-1-111(2)(c).

II.
Mother next contends the trial court erred in finding that she waived her right to *367 counsel during the initial hearing. She argues that her limited intellectual ability precluded a valid waiver. Again, we find no error.
An indigent parent has a statutory right to court-appointed counsel and must be advised of that right at his or her first appearance in a dependency and neglect proceeding. Sections 19-1-105(2), 19-3-202(1), C.R.S.2003. To invoke the right to counsel, a parent must request, in a timely manner, that an attorney be appointed. See People in Interest of V.W., 958 P.2d 1132 (Colo.App.1998). The right to counsel may be waived either expressly or impliedly. North Carolina v. Butler, 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979); see People in Interest of J.B., 702 P.2d 753 (Colo.App.1985).
Here, the record reveals that mother completed an application for court-appointed counsel on January 31, 2002, the day of the initial hearing. The minute order reflects, however, that mother waived the right to counsel and entered an admission to the petition.
At various times thereafter, the trial court and mother's caseworker encouraged her to request appointed counsel. Mother chose not to do so until after the conclusion of the permanency hearing in July 2002, at which time counsel was appointed.
There is nothing in the record showing that mother's intellectual ability was so limited as to render invalid her waiver of counsel. Instead, the record reveals that mother understood the nature of the proceedings and what was expected of her under the treatment plan. Therefore, the trial court did not err in finding that mother waived her right to counsel at the initial hearing.

III.
Mother also contends that the evidence was insufficient to satisfy the criteria for termination. We disagree.
To terminate the parent-child legal relationship pursuant to § 19-3-604(1)(c), C.R.S.2003, clear and convincing evidence must establish that the parent has not complied with a court-approved, appropriate treatment plan or that the treatment plan has not been successful in rehabilitating the parent; that the parent is unfit; and that the parent's conduct or condition is unlikely to change within a reasonable time. People in Interest of A.M.D., 648 P.2d 625 (Colo.1982).
The credibility of the witnesses and the sufficiency, probative effect, and weight of the evidence, as well as the inferences and conclusions to be drawn from it, are within the discretion of the trial court. Thus, a trial court's findings and conclusions will not be disturbed on review if the record supports them. People in Interest of C.A.K., 652 P.2d 603 (Colo.1982).

A.
Mother asserts that the trial court erred in finding that the treatment plans were appropriate. She argues that they inappropriately focused on substance abuse, rather than mental health. She also argues that, by failing to review her psychological evaluation with her or assist her in following through with its recommendations, the department failed to implement them appropriately. We disagree.
A treatment plan is appropriate if it "is reasonably calculated to render the particular [parent] fit to provide adequate parenting to the child within a reasonable time" and "relates to the child's needs." Section 19-1-103(10), C.R.S.2003. The purpose of a treatment plan is to preserve the parent-child relationship by assisting the parent in overcoming the problems that led to the dependency adjudication. Its appropriateness is measured by the likelihood of success in reuniting the family, which must be assessed in light of the facts existing at the time of its approval. People in Interest of M.M., supra.
The failure of a treatment plan to remedy the problems that required intervention and to reunite the family does not necessarily mean that it was inappropriate, for in many cases it is virtually impossible to devise a plan that will guarantee success. People in Interest of M.M., supra. Finally, it is the parent's responsibility to secure compliance with and success of a treatment plan. People *368 in Interest of A.H., 736 P.2d 425 (Colo.App.1987).
Here, the trial court found that it was reasonable to address substance abuse in the treatment plan on the basis of the information available to the caseworker. This information included a psychiatric evaluation, conducted three months before the petition was filed, that diagnosed mother with cocaine abuse in early remission, as well as a suicide attempt while under the influence of an unknown substance.
The trial court also found that the treatment plan reasonably addressed mother's emotional and mental illness and that reasonable efforts were made to implement the plan. These findings are supported by evidence that the caseworker repeatedly reminded mother of the importance of following through with mental health counseling and made appointments and provided transportation to facilitate compliance with the requirements. Mother, however, denied the need for counseling and refused to participate.
Thus, the record reveals that it was mother's failure to comply with the mental health provisions of the treatment plan that caused the plan to fail, rather than dereliction on the part of the department. See People in Interest of A.H., supra. Therefore, the trial court's findings concerning the appropriateness of the treatment plan will not be disturbed on review. See People in Interest of C.A.K., supra.

B.
Mother also asserts that the trial court erred in finding that she was unfit and that her conduct or condition was unlikely to change within a reasonable time. She argues that she would have participated in counseling to address her depression, which was amenable to treatment, if the results of her psychological evaluation had been reviewed with her. Again, we disagree.
An unfit parent is one whose conduct or condition renders him or her unable to give a child reasonable parental care. Reasonable parental care requires, at a minimum, that the parent provide nurturing and protection adequate to meet the child's physical, emotional, and mental health needs. Section 19-3-604(2), C.R.S.2003.
Among the factors to be considered in determining unfitness are the parent's emotional and mental conditions and neglect of the child. Section 19-3-604(2)(a), (f), C.R.S.2003. The trial court may also consider whether reasonable efforts by child-caring agencies have been made to rehabilitate the parent. Section 19-3-604(2)(h), C.R.S.2003.
In determining whether a parent's conduct or condition is unlikely to change within a reasonable time, a trial court may consider whether any change has occurred during the pendency of the dependency or neglect proceeding, the parent's social history, and the chronic or long-term nature of the parent's conduct or condition. People in Interest of D.L.C., 70 P.3d 584 (Colo.App.2003).
A reasonable time is not an indefinite time, and it must be determined by considering the physical, mental, and emotional conditions and needs of the child. People in Interest of D.L.C., supra; see § 19-3-604(3), C.R.S.2003. In expedited proceedings, a child must be placed in a permanent home within twelve months of his or her initial out-of-home placement, unless the trial court finds that a permanent home is not in the child's best interests at that time. Sections 19-1-123, 19-3-703, C.R.S.2003; People in Interest of R.J.A., 994 P.2d 470 (Colo.App.1999).
Here, the trial court's finding of unfitness was based primarily on mother's unresolved mental health problems, as well as on her inadequate parenting skills and neglect of the children. In addition to addressing depression, mother also needed to address her personality disorder and post-traumatic stress disorder. The record reveals that the personality disorder was not amenable to treatment and would require several years of intensive therapy. Throughout the pendency of the proceeding, mother denied a need for therapy and refused to follow through with medication prescribed for her depression.
Although the caseworker did not review mother's psychological evaluation with her, *369 she emphasized the importance of the mental health components of the treatment plan and made it clear that compliance was essential to return of the children. Further, the psychologist who conducted the evaluation testified that one of mother's appointments was for the purpose of reviewing the evaluation.
The children, who were two and three years old, had been placed out of the home for fifteen months at the time of the termination hearing. They had significant emotional and behavioral problems and delayed developmental skills as a result of the neglect suffered while in mother's care. The psychotherapist who evaluated them testified that the children had an immediate need for a permanent, stable home, without which they would be unable to address their problems.
Thus, the record supports the trial court's findings that mother was unfit and that her conduct or condition was unlikely to change within a reasonable time to meet the children's needs. Therefore, the findings will not be disturbed on review. See People in Interest of D.L.C., supra.
The judgment is affirmed.
Judge WEBB and Judge RUSSEL concur.