160 P.3d 257

The PEOPLE of the State of Colorado,
In the Interest of J.A.S., L.V.S., and J.J.S., Children,
Upon the Petition of the Denver Department of Human Services, Petitioner-Appellee, and
Concerning L.L.W. and J.L.S., Respondents-Appellants.

No. 06CA1441.

Colorado Court of Appeals, Div. VI.

January 11, 2007.

[160 P.3d 259]
        Cole Finegan, City Attorney, Laura Grzetic Eibsen, Assistant City Attorney, Denver, Colorado, for Petitioner-Appellee.
        Terry Ross, Guardian Ad Litem.
        Deborah Gans, Denver, Colorado, for Respondent-Appellant L.L.W.
        Philip Robert James, Denver, Colorado, for Respondent-Appellant J.L.S.
        Opinion by Judge JONES J. 
 
        L.L.W. (mother) and J.L.S. (father) appeal from a judgment terminating the parent-child legal relationships between them and their children. We affirm.

I. Background

        When this dependency and neglect proceeding was initiated in March 2004, father was incarcerated and mother was providing care for the children.
        At the first hearing before a magistrate, information was presented indicating that mother was of Indian descent with ties to the Hualapai and Rosebud Sioux tribes. Accordingly, the magistrate ordered the Department of Human Services (department) to notify those tribes of the proceeding, as required by the Indian Child Welfare Act of 1978 (ICWA), 25 U.S.C. Â§ 1901, et seq. (2000), and Â§ 19-1-126, C.R.S.2006.
        In April 2004, the parents admitted the petition in dependency and neglect, and treatment plans were approved shortly thereafter. In February 2006, the department filed a motion to terminate their parent-child legal relationships, alleging that although the parents had partially complied with their plans, they had failed to make significant improvement in their ability to provide safe, nurturing care for the children.
        On the first day of the May 2006 termination hearing, the department informed the juvenile court that it had notified the Hualapai and Ogalala Sioux tribes of the proceeding, both of which had responded indicating that the children were not enrolled or eligible for enrollment. Mother asked that the hearing be continued so she could present evidence regarding applicability of the ICWA. Questions also arose as to why the Rosebud Sioux tribe had not been notified. The court ordered the department to make copies of the notice and tribal responses for the parties, denied the motion to continue, and proceeded with the hearing. The hearing, however, could not be concluded that day and was not concluded until three weeks later.
        During the interim, the department notified the Rosebud Sioux tribe of the proceeding. The tribe responded, stating that the children were not enrolled or eligible for enrollment in the tribe. After the close of evidence, the juvenile court found that the ICWA was inapplicable because the tribes had determined the children were not enrolled or eligible for enrollment, and it terminated the parents' rights under Â§ 19-3-604(1)(c), C.R.S.2006.

II. Mother's Appeal

A. Applicability of the ICWA

        Mother contends that the juvenile court erred in determining that the ICWA did not apply. She argues that she was not given sufficient notice of the tribes' determinations to permit her to independently ascertain

160 P.3d 260

their status as Indian children. We find no error.
        Applicability of the ICWA depends on whether the child is an "Indian child." Catholic Charities in Interest of C.C.G., 942 P.2d 1380, 1382 (Colo.App.1997); People in Interest of A.G.-G., 899 P.2d 319, 321 (Colo.App.1995). The ICWA defines "Indian child" as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." 25 U.S.C. Â§ 1903(4) (2000).
        Tribal membership is not defined by the ICWA. Instead, each Indian tribe has the authority to determine its membership criteria and to decide who meets those criteria. B.H. v. People in Interest of X.H., 138 P.3d 299, 303 (Colo.2006); People in Interest of A.E., 749 P.2d 450, 452 (Colo.App. 1987). A tribe's determination of membership or membership eligibility is conclusive and final. In re S.M.H., 33 Kan.App.2d 424, 428, 103 P.3d 976, 981 (2005); In re Welfare of S.N.R., 617 N.W.2d 77, 84 (Minn.Ct.App. 2000); In re Adoption of Riffle, 273 Mont. 237, 242, 902 P.2d 542, 545 (1995); Guidelines for State Courts: Indian Child Custody Proceedings, 44 Fed.Reg. 67,584, 67,586 (1979); see B.H. v. People in Interest of X.H., supra, 138 P.3d at 303; People in Interest of A.G.-G., supra, 899 P.2d at 321; People in Interest of A.E., supra, 749 P.2d at 452.
        Here, although mother was not advised of the tribes' determinations until the termination hearing, additional time in which to ascertain the children's tribal membership would have been unavailing because the tribes' determinations were conclusive. Accordingly, we perceive no error in the juvenile court's determination that the ICWA did not apply.

B. Compliance with Treatment Plan

        Asserting that she substantially complied with the treatment plan, mother contends that the evidence was insufficient to support the criteria for termination. We disagree.
        To terminate the parent-child legal relationship under Â§ 19-3-604(1)(c), clear and convincing evidence must establish, among other things, that an appropriate treatment plan, approved by the court, has not been complied with by the parent or that the plan has not been successful in rehabilitating the parent. Section 19-3-604(1)(c)(I), C.R.S. 2006.
        The parent is responsible for securing compliance with and success of a treatment plan. People in Interest of L.A.C., 97 P.3d 363, 367-68 (Colo.App.2004); People in Interest of A.H., 736 P.2d 425, 428 (Colo.App. 1987). Although absolute compliance is not required, partial compliance, or even substantial compliance, may not result in success of the plan by correcting or improving the parent's conduct or condition or by rendering the parent fit. People in Interest of D.L.C., 70 P.3d 584, 588 (Colo.App.2003).
        When, as here, a proceeding involves a child under the age of six, reasonable or successful compliance with a treatment plan cannot be found if "[t]he parent has not attended visitations with the child as set forth in the treatment plan, unless good cause can be shown for failing to visit" or "[t]he parent exhibits the same problems addressed in the treatment plan without adequate improvement, including but not limited to improvement in the relationship with the child," and remains unable to meet the child's needs. Section 19-3-604(1)(c)(I)(A), (B), C.R.S.2006; see C.S. v. People in Interest of I.S., 83 P.3d 627, 641 (Colo.2004); People in Interest of M.T., 121 P.3d 309, 311 (Colo.App. 2005).
        The credibility of the witnesses and the sufficiency, probative effect, and weight of the evidence, as well as the inferences and conclusions to be drawn from it, are within the discretion of the trial court. Thus, a trial court's findings and conclusions will not be disturbed on review if the record supports them. People in Interest of C.A.K., 652 P.2d 603, 613 (Colo.1982).
        Here, while noting mother's completion of parenting classes and cooperation with the department and other service providers, the juvenile court found that she did not reasonably

160 P.3d 261

or successfully comply with the treatment plan. In reaching this determination, the court cited mother's lack of stable employment, which compromised her ability to maintain housing; her sporadic compliance with substance abuse treatment and her missed and positive random urinalyses tests; her failure to follow through with mental health treatment; her failure to comply with the conditions of probation; and her failure to regularly attend supervised visits with the children.
        Because the record supports these findings, we may not disturb them on review. See People in Interest of C.A.K., supra, 652 P.2d at 613.

C. Less Drastic Alternative to Termination

        Mother also contends that the juvenile court erred in refusing to place the children with father as a less drastic alternative to termination. In support of this contention, she argues that father was allowed to have unsupervised visits with the children and should have been given more time in which to complete the treatment plan. We disagree.
        Mother's challenge to the juvenile court's finding rejecting placement with father as a less drastic alternative is essentially a challenge to the court's findings that father was unfit and unlikely to change within a reasonable time. Father has not challenged these particular findings on appeal, and, to the extent the challenged findings affect only father's rights, mother lacks standing to do so. See People in Interest of J.M.B., 60 P.3d 790, 792 (Colo.App.2002) (determining that one parent does not have standing to raise issues regarding the propriety of termination of the other parent's rights).
        To the extent mother is deemed to have standing by virtue of her own interest in having the children placed with father as a less drastic alternative to termination, see People in Interest of J.M.B., supra (court must consider and eliminate less drastic alternatives before terminating the parent-child relationship), we nevertheless find no basis for reversal. The record supports the court's finding that father was an unfit parent.

III. Father's Appeal

A. Admission of Criminal History Report

        Father contends that the juvenile court erred in admitting into evidence his Colorado Bureau of Investigation criminal history report (CBI report). We find no reversible error.
        When trial is to a court, rather than to a jury, we presume that the trial court disregarded any immaterial, incompetent, or hearsay evidence that may have been introduced. People in Interest of T.E.M., 124 P.3d 905, 909 (Colo.App.2005); People in Interest of A.R.S., 31 Colo.App. 268, 274, 502 P.2d 92, 95 (1972). Further, error may not be predicated upon a ruling that admits or excludes evidence unless a substantial right of the party is affected. CRE 103; see C.A.R. 35(e).
        Assuming, without deciding, that the CBI report was improperly admitted, we find no reversible error. In overruling father's objection, which contested the accuracy of the report, the juvenile court found that the report was self-authenticating and stated that its weight would be determined in light of any contradictory evidence. Thereafter, father's parole officer testified about the conviction on which father was incarcerated when the petition in dependency and neglect was filed and his compliance with the conditions of parole upon release from incarceration. No evidence undermining the accuracy of the CBI report was admitted, and there is no indication that the juvenile court considered the report in ordering termination.
        Under these circumstances, admission of the CBI report did not affect father's substantial rights and does not require reversal. See CRE 103; C.A.R. 35(e); People in Interest of T.E.M., supra, 124 P.3d at 909; People in Interest of A.R.S., supra, 31 Colo.App. at 273-74, 502 P.2d at 95.

B. Sufficiency of the Evidence

        Father also contends that the order of termination violates his right to due process.

160 P.3d 262

Specifically, he asserts that the evidence was insufficient to support the order, arguing that the department's delay in contacting him after the petition in dependency and neglect was filed and its delay in providing a treatment plan, together with its failure to observe his visits with the children to assess his parenting skills, rendered its rehabilitative efforts unreasonable. We disagree.
        To protect a parent's fundamental liberty interest in the care, custody, and management of his or her child, due process requires the state to provide fundamentally fair procedures in a dependency and neglect proceeding. B.B. v. People, 785 P.2d 132, 136 (Colo.1990); People in Interest of A.M.D., 648 P.2d 625, 632 (Colo.1982). At a minimum, a parent must be given adequate notice of the proceeding and an opportunity to protect his or her rights. People in Interest of M.M., 726 P.2d 1108, 1115 (Colo.1986). A parent may not obtain relief on a due process claim absent a showing of harm or prejudice. See People in Interest of A.L.B., 994 P.2d 476, 480 (Colo.App.1999).
        When appropriate, the state must make reasonable efforts to reunite the family. Section 19-3-100.5(1), (4), C.R.S.2006. "Reasonable efforts" means the exercise of diligence and care for children who are placed out of the home. Section 19-1-103(89), C.R.S.2006. A trial court may consider whether reasonable efforts have been made to rehabilitate a parent in determining parental unfitness. Section 19-3-604(2)(h), (k)(III), C.R.S.2006.
        The reasonable efforts standard is deemed met if services are provided in accordance with Â§ 19-3-208, C.R.S.2006. Sections 19-1-103(89), 19-3-100.5(4), C.R.S.2006. Among the services required by Â§ 19-3-208 are an assessment of the family, development of a case plan for the provision of services, and visitation services. Section 19-3-208(2)(b)(I), (IV), C.R.S.2006. The child's health and safety are the paramount concerns in determining whether it is appropriate to provide visitation services. Sections 19-1-103(89), 19-3-100.5(2), C.R.S.2006; People in Interest of D.G., 140 P.3d 299, 302 (Colo.App.2006); People in Interest of B.C., 122 P.3d 1067, 1070 (Colo.App.2005); see Â§ 19-3-208(2), C.R.S.2006.
        The record here reveals that when the petition in dependency and neglect was filed on March 26, 2004, father was incarcerated. Four days later, the juvenile court appointed counsel to represent him. On April 26, father admitted the petition, and the dispositional hearing was set for June 7. On that date, father asked for and received a continuance. His treatment plan was approved at the following hearing on July 12. In November, the paternal grandparents began facilitating visits between the children and father.
        Father's caseworkers did not contact him directly while he was incarcerated. Instead, they monitored his compliance with the treatment plan through court hearings, during which he was represented by counsel and appeared by telephone. Upon his release to a community corrections halfway house in May 2005, his treatment plan was amended to require participation in services that were not available while he was incarcerated. In October 2005, after he had progressed to intensive supervised parole, his visits with the children became unsupervised.
        During the May 2006 termination hearing, the caseworker testified that she did not observe father's visits because she had no concerns about his interaction with the children. Instead, her concerns about his parenting ability stemmed from his lack of employment and housing and his recent violations of the conditions of parole. To address these concerns, the department provided housing and employment assistance, bus passes and tokens, substance abuse monitoring, and intensive in-home therapeutic services. Had father participated in the in-home services, his interaction with the children would have been observed.
        Thus, the record reveals that the one-month delay in approval of the treatment plan was due to father's request for a continuance; prior to father's release from incarceration, the caseworkers monitored his compliance with the treatment plan through court hearings; father's interaction with the children was appropriate; and father was given one year to participate in appropriate rehabilitative services after he was released

160 P.3d 263

from incarceration. This evidence is sufficient to support the juvenile court's finding that the department made reasonable efforts to rehabilitate father. Therefore, we perceive no violation of his right to due process. See People in Interest of C.A.K., supra, 652 P.2d at 610, 612, 613; People in Interest of A.M.D., supra, 648 P.2d at 631, 641.

IV. Conclusion

        For the foregoing reasons, the judgment of the juvenile court is affirmed.
        Judge WEBB and Judge CARPARELLI concur.