21CA0464 Peo in Interest of DS 12-09-2021 COLORADO COURT OF APPEALS Court of Appeals No. 21CA0464 Jefferson County District Court No. 18JV487 Honorable Ann Gail Meinster, Judge The People of the State of Colorado, Appellee, In the Interest of D.S. and M.S., Children, and Concerning A.S. and J.S., Appellants. JUDGMENT AFFIRMED AND APPEAL DISMISSED IN PART Division II Opinion by JUDGE ROMÁN Berger and Yun, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced December 9, 2021 Kimberly Sorrells, County Attorney, Cara J. Sweet, Assistant County Attorney, Golden, Colorado, for Appellee Graham B. Peper, Guardian Ad Litem Dylan Bateman, Office of Respondent Parents’ Counsel, Longmont, Colorado, for Appellant A.S. Ruchi Kapoor, Office of Respondent Parents’ Counsel, Denver, Colorado, for Appellant J.S.
1 ¶ 1 In this dependency and neglect proceeding, J.S. (father) and A.S. (mother) appeal the judgment terminating their parental rights to D.S. and M.S. (the children). We dismiss father’s appeal, and we affirm the judgment terminating mother’s parental rights. I. Background ¶ 2 In May 2018, the Jefferson County Division of Children, Youth and Families (Division) initiated an action in dependency and neglect. The Division alleged that mother threatened N.M., Jr. — an older half-sibling of the children — with a knife. Police responded to mother’s home and found it “cluttered” to the point that it was difficult to move around; they believed that the home was unsafe for the children and contacted the Division. After an investigation, the Division expressed concerns about mother’s ability to properly care for the children based on her erratic behavior and alleged substance use. ¶ 3 Mother initially denied the allegations in the petition and asked for a jury trial. Father did not appear at the adjudication hearing, the juvenile court entered a default judgment adjudicating the children dependent and neglected in relation to him, and it adopted a treatment plan for father. Several months later, mother 
2 admitted to the allegations in the petition, the court entered an adjudication in relation to her, and it adopted a treatment plan for her. ¶ 4 The Division moved to terminate mother’s and father’s parental rights in June 2020. The juvenile court held an evidentiary hearing over multiple days between October 2020 and January 2021. After hearing the evidence, the court terminated the parents’ parental rights. II. Father’s Appeal ¶ 5 Father asserts that the juvenile court (1) erred by failing to appoint him counsel at the adjudicatory stage of the case; and (2) lacked jurisdiction to terminate his parental rights because the court used an “unconstitutional procedure” to adjudicate the children dependent and neglected. We conclude that these contentions are not properly before us. ¶ 6 First, father asserts that the juvenile court deprived him of his statutory right to counsel, see § 19-3-202(1), C.R.S. 2021, when it did not appoint him an attorney at the initial hearing in this case, see Chief Justice Directive 16-02, Court Appointments through the Office of Respondent Parents’ Counsel, § VIII.a (amended Mar. 
3 2021) (“Judges and Magistrates shall appoint [respondent parents’ counsel] no later than the first temporary custody/shelter/initial hearing.”) (CJD 16-02). Although divisions of this court have concluded that a parent must first request counsel to invoke the statutory right, see, e.g., People in Interest of V.W., 958 P.2d 1132, 1133-34 (Colo. App. 1998), father maintains that CJD 16-02 created a procedural mechanism for the appointment of counsel that “supersedes prior case law.” ¶ 7 We need not decide whether CJD 16-02 displaces our case law, however, because father’s claim is untimely. A parent must challenge an alleged procedural error made during the adjudication stage by filing a timely appeal of the adjudication order after entry of the disposition. People in Interest of E.H., 837 P.2d 284, 287 (Colo. App. 1992). Here, father did not appeal the court’s adjudicatory order. See C.A.R. 3.4(b)(1). Thus, his appeal of this issue is untimely, and we lack jurisdiction to reach the merits of his claim. See People in Interest of A.E., 994 P.2d 465, 467 (Colo. App. 1999). ¶ 8 We are not otherwise persuaded by father’s argument that he could not timely raise a challenge to the adjudicatory order because 
4 he did not have the assistance of counsel to appeal it. While it may have been more difficult to appeal the adjudicatory order without counsel, father fails to point us to anything specific that prevented him from filing a timely appeal. ¶ 9 In any event, father did have counsel later, and he still made no effort to challenge the court’s adjudicatory order until now. The record shows that the juvenile court appointed counsel for father in January 2019, after he appeared in court for the first time. To be sure, the court had not appointed counsel until several months into the case, but father still had the assistance of counsel for more than two years before the court entered a termination order. During that time, father never once asked for relief from the adjudicatory order. See People in Interest of C.B., 2019 COA 168, ¶ 21 (recognizing that, even if the time to file an appeal has passed, a parent may still seek recourse by moving the juvenile court for relief under C.R.C.P. 60(b)). We therefore decline father’s invitation to address his untimely challenge. ¶ 10 Next, father asserts that the juvenile court utilized an “unconstitutional procedure” to adjudicate the children dependent and neglected. As a result, he asserts that the court did not have 
5 jurisdiction to terminate his parental rights. Because father needed to file a timely appeal of the adjudication to challenge the procedure the court used to adjudicate the children, we again conclude that father’s contention is not properly before us. ¶ 11 The record shows that the Division served father with a notice and summons in this case, but he did not appear or otherwise participate in the case. At a July 2018 adjudicatory hearing, the Division asked to proceed by an “offer of proof,” which the court allowed. After the Division’s counsel made a brief offer of proof, the court sustained the petition and adjudicated the children dependent and neglected. ¶ 12 The Division and the guardian ad litem (GAL) contend that the court properly entered an adjudication via default judgment, even though the Division’s attorney never asked for a default judgment and the court never explicitly entered one. See People in Interest of K.J.B., 2014 COA 168, ¶ 12 (noting that a juvenile court may enter a default judgment adjudicating a child dependent and neglected under C.R.C.P. 55 when a party fails to plead or otherwise defend). Father maintains that, because the Division did not ask for a default judgment, it had to present evidence to prove, by a 
6 preponderance of the evidence, whether the children were dependent and neglected. §§ 19-3-102(1), 19-3-505(1), C.R.S. 2021. But father asserts that the Division did not present any evidence; rather, it proceeded by an offer of proof, an improper procedure considering that he was not present to agree to it. See K.J.B., ¶ 14 (noting that an attorney can agree to proceed by offers of proof even when the client is not present). ¶ 13 We need not resolve this dispute either because father’s challenge to the adjudication is untimely. This appeal presents a similar, although not identical, situation to the one presented to a division of this court in C.B. In that case, the court entered a default judgment adjudicating the children dependent and neglected, even though the parent had not been served, advised of her rights, or appointed counsel. C.B., ¶ 11. The parent did not appeal the adjudication; instead, she challenged the juvenile court’s procedure adjudicating the children dependent or neglected in her appeal of the termination judgment. Id. at ¶ 19. While a division of this court noted its “grave concerns about the process by which the juvenile court entered adjudication,” it determined that the parent’s 
7 challenge of the adjudication was untimely and declined to address it. Id. at ¶ 17. ¶ 14 As noted above, father did not appeal the adjudication or attempt to have the order set aside at any point before filing this appeal, even though he was represented by counsel for most of the case. Under these circumstances, we conclude that father’s claim is not properly before us, and we decline to address it. See id. at ¶¶ 17-23; E.H., 837 P.2d at 287. Finally, because father’s jurisdictional claim relies on his contention that the court erred in its entry of an adjudication, we necessarily reject it. See People v. C.O., 2017 CO 105, ¶ 33 (The court’s “jurisdiction rested on the status of the children as dependent or neglected, and [the parent] never . . . offered the court any basis to conclude that the children were not dependent or neglected.”); People in Interest of N.D.V., 224 P.3d 410, 414 (Colo. App. 2009) (“An error in procedure does not implicate the court’s jurisdiction unless it results in a court’s attempt to exercise power over a class of cases or over persons not within its constitutional or statutorily prescribed authority.”). 
8 III. Mother’s Appeal ¶ 15 Mother asserts that the juvenile court reversibly erred when it (1) considered hearsay evidence in rendering its decision to terminate her parental rights; and (2) found that there were no less drastic alternatives to termination. We disagree. A. Termination Criteria and Standard of Review ¶ 16 The juvenile court may terminate parental rights if it finds, by clear and convincing evidence, that (1) the child was adjudicated dependent and neglected; (2) the parent has not complied with an appropriate, court-approved treatment plan or the plan has not been successful; (3) the parent is unfit; and (4) the parent’s conduct or condition is unlikely to change in a reasonable time. § 19-3-604(1)(c), C.R.S. 2021. ¶ 17 Whether a juvenile court properly terminated parental rights presents a mixed question of fact and law because it involves application of the termination statute to evidentiary facts. People in Interest of A.M. v. T.M., 2021 CO 14, ¶ 15. We will not disturb the court’s factual findings when the record supports them. Id. The credibility of the witnesses as well as the sufficiency, probative effect and weight of the evidence, and the inferences and 
9 conclusions to be drawn from them are within the province of the juvenile court. People in Interest of A.J.L., 243 P.3d 244, 249-50 (Colo. 2010). A determination of the proper legal standard to be applied in a case and the application of that standard to the particular facts of the case are questions of law that we review de novo. M.A.W. v. People in Interest of A.L.W., 2020 CO 11, ¶ 31. ¶ 18 We review evidentiary claims for an abuse of discretion. People in Interest of M.V., 2018 COA 163, ¶ 52. “A court abuses its discretion when its ruling is based on an erroneous understanding or application of the law or is manifestly arbitrary, unreasonable, or unfair.” Id. ¶ 19 In a dependency and neglect case, an error is harmless if it did not affect the substantial right of a party. C.R.C.P. 61; People in Interest of R.D., 2012 COA 35, ¶ 25. An error affects a substantial right if it can be said with fair assurance that it substantially influenced the outcome of the case or impaired the basic fairness of the trial itself. M.V., ¶ 66. B. Hearsay Evidence ¶ 20 Mother first contends that the juvenile court erred by relying on inadmissible hearsay evidence contained in the termination 
10 report to find that the children had a negative response to visitation with mother, and thus, that an ongoing relationship with her would be detrimental to the children. We discern no reversible error. ¶ 21 Hearsay is a statement other than one “made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.” CRE 801(c). Hearsay statements are generally inadmissible at trial. CRE 802; Vista Resorts, Inc. v. Goodyear Tire & Rubber Co., 117 P.3d 60, 66 (Colo. App. 2004). There are several exceptions to the general prohibition against the admission of hearsay. For example, a caseworker’s written report is generally admissible under section 19-1-107, C.R.S. 2021. See People in Interest of R.D.H., 944 P.2d 660, 665 (Colo. App. 1997); see also People in Interest of A.R.S., 31Colo. App. 268, 273, 502 P.2d 92, 94 (1972) (noting that, “[b]ecause of the statutory authorization, the common-law hearsay objections as to the admissibility of such reports are not applicable”). Likewise, under CRE 703, information relied upon by a caseworker qualified as an expert is generally admissible for the limited purpose of explaining the basis of the caseworker’s opinion. People v. Bornman, 953 P.2d 952, 956 (Colo. App. 1997). 
11 ¶ 22 At the termination hearing, the Division moved to admit the caseworker’s termination report. Mother acquiesced to the report’s admission, but she objected to “the hearsay material that’s contained in the report.” The juvenile court admitted the report, including the “hearsay material,” but the court stated that it would not consider the “hearsay in the report for the truth of the matter.” Rather, the court concluded that the challenged statements in the report were admissible only to explain the basis of the caseworker’s opinion. At subsequent hearings, the Division moved to admit updated versions of the report, mother objected for the same reasons described above, and the court maintained its previous ruling. ¶ 23 On appeal, mother asserts that, contrary to the court’s ruling admitting the statements in the report for the limited purpose of explaining the caseworker’s opinion, the court instead relied on the challenged statements in the termination report for the truth of the matter asserted. In support, she points to a single line in the court’s oral ruling, in which it stated that it “share[d] the [GAL’s] concern about the effects of the[] visits” on D.S. and that the second caseworker “testified about this.” 
12 ¶ 24 We reject mother’s contention because we see nothing in the court’s ruling to suggest that it considered the statements in the termination report for any purpose other than the one expressed in its evidentiary ruling. When a trial is to a court, instead of a jury, we presume that the juvenile court disregarded any immaterial, incompetent, or hearsay evidence. People in Interest of J.A.S., 160 P.3d 257, 261 (Colo. App. 2007). And we will not disturb the court’s judgment unless it could not have reached the result but for the incompetent evidence. People in Interest of M.M., Jr., 215 P.3d 1237, 1249-50 (Colo. App. 2009). ¶ 25 At most, the portion of the court’s ruling identified by mother reflects that the court found persuasive the second caseworker’s expert opinion that the visits between D.S. and mother were having a negative impact on him. The court did not mention any of the challenged statements from the report or otherwise suggest that it intended to rely on any of the challenged statements as substantive evidence. As to the second caseworker’s testimony, mother did not object to any hearsay statements. And, in any event, the statements conveyed to the caseworker by other parties, such as the child’s foster parents, would have been admissible for the same 
13 reasons they were admissible in the report. See Bornman, 953 P.2d at 956. Because the court never suggested that it would consider those statements for the truth of the matter asserted, we must presume that the court disregarded them except to explain the basis of the caseworker’s opinion. See J.A.S., 160 P.3d at 261. ¶ 26 Nevertheless, even if we assume, without deciding, that the juvenile court improperly considered hearsay evidence about the impact of visits on the children, we conclude that any error is harmless. See People in Interest of D.B., 2017 COA 139, ¶ 36. ¶ 27 Mother argues that because there was no competent evidence about the visits in the record, the court could not find that an ongoing relationship with mother would be detrimental to the children. In turn, mother asserts that the court could not find that termination was in the children’s best interests or that there were no less drastic alternatives to termination without its conclusion that an ongoing relationship would be detrimental to the child. ¶ 28 Even assuming the absence of admissible evidence supporting the court’s finding that the visits were negatively impacting the children, we still conclude that any error is harmless because the visits were not the sole basis for the court’s conclusion that an 
14 ongoing relationship with the children would be detrimental. See id. at ¶ 36. Rather, the court relied on evidence of violence in the home, mother’s substance use, her inability to recognize that her substance use threatened the children’s safety, and her erratic behavior and mental health concerns as additional reasons that an ongoing relationship would be detrimental to the children. See id. (noting that any putative error was harmless because other evidence supported the court’s determination that the child would likely suffer damage in mother’s care). The court’s findings, as discussed in more detail below, are supported by ample evidence in the record. We therefore discern no reversible error. C. Less Drastic Alternatives ¶ 29 Mother next asserts that the juvenile court erred by finding that permanent placement with mother’s eldest son, N.M., Jr., was not a less drastic alternative to termination. We disagree. ¶ 30 Before terminating parental rights under section 19-3-604(1)(c), the juvenile court must consider and eliminate less drastic alternatives. People in Interest of M.M., 726 P.2d 1108, 1122 (Colo. 1986); see also People in Interest of L.M., 2018 COA 57M, ¶ 24 (The consideration of a less drastic alternative is not a separate 
15 criterion but rather “is implicit in, and thus intertwined with, the statutory criteria for termination.”). A less drastic alternative analysis requires the court to consider whether any placement, short of termination, would be in the child’s best interests. People in Interest of A.R., 2012 COA 195M, ¶ 44. Thus, in considering less drastic alternatives, courts must give primary consideration to the child’s physical, mental, and emotional conditions and needs. § 19-3-604(3). ¶ 31 In assessing whether a proposed less drastic alternative is a viable option, a juvenile court may consider various factors, including whether an ongoing relationship with a parent would be beneficial or detrimental to the child. A.R., ¶ 38. This determination will be influenced by a parent’s fitness to care for the child’s needs. Id. ¶ 32 For a less drastic alternative to be viable, it must do more than “adequately” meet a child’s needs; rather, the less drastic alternative must be the “best” option for the child. A.M., ¶ 27. Therefore, if the court considers a less drastic alternative but finds instead that termination is in the child’s best interests, it must reject the less drastic alternative and order termination. Id. at ¶ 32. 
16 When the court considers the availability of a less drastic alternative and still determines that the termination of parental rights would be in the child’s best interests, we are bound to affirm the court’s decision if its findings are supported by the record. People in Interest of B.H., 2021 CO 39, ¶ 80. ¶ 33 Here, the juvenile court considered and rejected less drastic alternatives to termination. Specifically, the court found that, despite the Division’s extensive efforts to identify relative placements, there were no relatives available to care for the children. In any event, the court determined that, even if there was an available relative placement, any placement short of termination was not appropriate or in the children’s best interests because an ongoing relationship with mother would not benefit the children. ¶ 34 First, the record supports the court’s finding that there were no relatives available to care for the children. The first caseworker testified that the Division explored eleven different family members as possible placements but none of the options were appropriate. As to N.M., Jr., the record reveals that mother opposed placement with him until the beginning of the termination hearing. Nevertheless, the record shows that the Division considered N.M., 
17 Jr. as a possible placement but determined that he was not a viable long-term placement option for the children. The first caseworker testified that N.M., Jr. could not maintain appropriate boundaries between mother and the children. And the second caseworker opined that, given N.M., Jr.’s work schedule and commitments to caring for mother’s other children, he could not properly care for these children, given their young age and significant needs. ¶ 35 Second, the record supports the court’s finding that an ongoing relationship with mother would not be beneficial to the children. For example, the record shows that mother did not address domestic violence issues in the home and could not provide the children with a safe environment. The evidence also established that mother did not demonstrate sobriety during the case and attended only a few treatment appointments. Finally, the record shows that mother had not addressed her mental health issues and still needed years of treatment before she would be ready to provide a stable environment for the children or be able to meet their needs. ¶ 36 Still, mother asserts that the Division did not “seriously consider[]” placement with N.M., Jr. because it failed to conduct an “updated home study.” As a result, mother contends that the court 
18 could not properly consider less drastic alternatives. However, mother’s argument ignores the court’s finding that it would have rejected a less drastic alternative even if an appropriate relative placement existed because an ongoing relationship with mother was not in the children’s best interests. In other words, the court determined that termination was in the children’s best interests, regardless of the availability of a relative, and as a result, the court was required to reject the proposed less drastic alternative and enter termination. See A.M., ¶ 32. And because the court’s finding is supported by ample evidence in the record, we are bound by it. See B.H., ¶ 80. IV. Conclusion ¶ 37 We dismiss father’s appeal, and we affirm the judgment terminating mother’s parental rights. JUDGE BERGER and JUDGE YUN concur.