The Supreme Court of the State of Colorado 
2 East 14th Avenue • Denver, Colorado 80203
2016 CO 40
Supreme Court Case No. 15SC514 
Certiorari to the Colorado Court of Appeals 
Court of Appeals Case No. 14CA1527
Petitioner: 
E.S.V., 
v. 
Respondent: 
The People of the State of Colorado, 
In the Interest of Minor Children: 
C.E.M. and M.F.M.
Judgment Affirmed 
en banc
May 23, 2016
Attorney for Petitioner: Deborah Gans
Denver, Colorado
Attorneys for Respondent:
D. Scott Martinez, Denver City Attorney
Laura Grzetic Eibsen, Assistant City Attorney Denver, Colorado
Guardian ad Litem for the Minor Children: Anna N. H. Ulrich, Attorney at Law, LLC Anna N. H. Ulrich
Salida, Colorado
JUSTICE GABRIEL delivered the Opinion of the Court.
JUSTICE EID dissents, and CHIEF JUSTICE RICE and JUSTICE COATS join in the dissent.

¶1 In this case, E.S.V. (“mother”) challenges the termination of her parental rights with respect to C.E.M. and M.F.M. (“children”). Mother’s treatment plan included as one of its objectives that mother would “demonstrate appropriate protective capacities to ensure her children’s safety.” To achieve this objective, mother was required to report to her caseworker and the guardian ad litem (“GAL”) any contact that she had with the children’s abusive father (“father”).
¶2 The district court found that mother had failed to report numerous contacts with 
father and was unable or unwilling to internalize the safety concerns at which the treatment plan was directed, despite the efforts of many professionals and treatment providers. The court thus found that (1) mother’s conduct prevented her from providing protection adequate to meet the children’s needs, (2) the treatment plan was unsuccessful, (3) mother was unfit, and (4) mother’s deficiencies regarding her ability to demonstrate appropriate protective capacities were unlikely to change within a reasonable time. The court therefore terminated mother’s parental rights as to the children.
¶3 Mother appealed this ruling, a division of the court of appeals affirmed, People 
in the Interest of C.E.M., No. 14CA1527, slip op. at 5–13, 22 (May 28, 2015), and we granted certiorari.[1] Like the division, we now conclude that the evidence amply supported the district court’s decision to terminate mother’s parental rights. Accordingly, we affirm.
I. Facts and Procedural History
¶4 Two years before this case began, the Denver Department of Human Services (the “department”) filed a dependency and neglect petition against mother and father based on allegations of substance abuse, domestic violence, improper sexual contacts between father and mother’s teenage daughter, and mental health issues. That case closed with an allocation of parental responsibilities to mother and an order that father have no contact with C.E.M. and certain other children until he completed the recommendations resulting from certain evaluations.
¶5 The day after the prior case was closed, the department received a report that 
mother had used methamphetamine in her home while one of the children was crying and unattended and the other was eating dry ramen noodles. After mother refused to cooperate with the department’s efforts to investigate these allegations, the department filed the dependency and neglect petition that led to these termination proceedings.
¶6 The district court subsequently adjudicated the children dependent and  neglected and as pertinent here, adopted a treatment plan for mother that included as one of its objectives that mother would “demonstrate appropriate protective capacities to ensure her children’s safety.” To achieve this objective, mother was required, among a relationship with the father and was intended to allow her to do so as long as she reported all contact with him to the caseworker. other things, to “report to the caseworker and GAL any contact that she [had] with [father].”
¶7 After giving mother time to comply with her treatment plan, and after she was unable to do so, the department moved to terminate mother’s parental rights. In this motion, the department contended that (1) mother had not complied with her treatment plan, (2) she was unfit, (3) her conduct rendered her unwilling or unable to give the children reasonable parental care, and (4) her conduct or condition was unlikely to change within a reasonable time.
¶8 The matter proceeded to a hearing, and the evidence established the following:
¶9 Rather than imposing a no-contact order between mother and father, which was an approach that had failed in the prior dependency and neglect case, mother’s caseworker wanted to allow mother and father the opportunity to be a couple and to be truthful about it, so that they could work on their treatment plans together. Accordingly, the caseworker asked that mother report any contact that she had with father, and such a requirement was incorporated into mother’s treatment plan.
¶10 Thereafter and throughout this case, mother repeatedly and adamantly denied that she and father were a couple. Indeed, whenever the caseworker raised the issue of whether mother and father were together, mother would get very upset with the caseworker for bringing up the subject.
¶11 Contrary to mother’s adamant denials, overwhelming evidence established that mother had, in fact, had extensive contacts with father, reported very few of these contacts, and was repeatedly untruthful about such contacts. For example, the department uncovered evidence that mother had had 180 telephone calls with father but reported only six or seven of such calls. Moreover, at the same time that mother was denying contact with father, she was pregnant with father’s child (not one of the children at issue here), although she initially delayed disclosing that pregnancy and then told an elaborate, fabricated story concerning another man whom she alleged to be the father. And after father was stopped for a traffic violation while driving a car registered to mother, he told the police officer that he was driving “his girl’s car” and that he had been staying at her house. When the caseworker then spoke with him about this incident, he shared information with the caseworker that made it obvious that he had been in communication with mother.
¶12 The record further established that mother was unable to demonstrate the “appropriate protective capacities to ensure her children’s safety” at which her treatment plan was directed. For example, a psychologist diagnosed mother with a mood disorder, partner relational disorder, and histrionic personality disorder, and mother’s therapist opined that it is “critical” for someone with histrionic personality disorder to be honest with himself or herself in treatment. Mother, however, was not honest, particularly regarding her desires and intentions concerning her relationship with father, and mother’s therapist opined that mother’s dishonesty compromised the integrity of the therapeutic process. These circumstances, coupled with mother’s personality disorder, suggested to the therapist that mother was “comfortable in creating havoc and chaos,” and this made the therapist “really uncomfortable” regarding whether she could trust mother’s decisions and “the process that’s going to influence the state of the household and the quality of life for [mother] and her children.”
¶13 The record bears out the therapist’s opinions and discomfort, as well as the effects on the children of mother’s refusal to internalize the treatment plan’s safety concerns. For example, in the course of this case, father’s teenage daughter reported that father had beaten her in a car while mother sat in the passenger seat. Similarly, the evidence established that C.E.M. appeared to have symptoms of trauma and “high anxiety” and needed “consistent and predictable safety, both physically and emotionally.”
¶14 Based on the foregoing evidence, the district court found that:
1. Mother had not reasonably complied with the treatment plan and exhibited the same problems addressed in her current and prior treatment plans without adequate improvement to ensure the children’s safety should they be returned to her care.
2. Despite extensive intervention and treatment for the family, mother was unable or unwilling to provide nurturing and safe parenting sufficiently adequate to meet the children’s physical, emotional, and mental health needs.
3. Mother was unfit, and her conduct or condition rendered her unable or unwilling to give the children reasonable parental care, including, at a minimum, nurturing and safe parenting sufficiently adequate to meet the children’s physical, emotional, and mental health needs and conditions.
4. Mother’s conduct or condition relating to her protective capacity was unlikely to change within a reasonable time.
5. The minor children, who were under six years of age when they were removed from the home, had been out of mother’s care for twenty consecutive months, and this case had continued far past the applicable expedited permanency planning (“EPP”) deadlines.

¶15 In light of these findings, the court terminated the parent-child relationship between mother and the children. A division of the court of appeals subsequently affirmed, People in the Interest of C.E.M., slip op. at 5–13, 22, and we granted certiorari. 

II. Analysis
¶16 Mother contends that the district court erred in terminating her parental rights based on her continued relationship with the children’s father, whom the court found to pose a threat to the children’s welfare, because her treatment plan did not prohibit her from maintaining a relationship with father and was intended to allow her to do so. We are not persuaded.
¶17 As an initial matter, we note that mother’s statement of the issue presented, which also framed our statement of the issue on certiorari, is premised on a fundamental misunderstanding of the district court’s ruling. The district court did not terminate mother’s parental rights based solely on her continued relationship with father. Rather, the court terminated mother’s parental rights because (1) she had repeatedly violated the requirement that she report her contacts with father to her caseworker and the GAL (indeed, she was repeatedly untruthful about those contacts) and (2) for that reason and others, she could not demonstrate the appropriate protective capacity to ensure her children’s safety that was a principal objective of her treatment plan.
¶18 Accordingly, we will construe the question presented as whether the district court erred in terminating mother’s parental rights based on the evidence presented. We conclude that it did not.

¶19 To terminate parental rights, a court must find by clear and convincing evidence that the child has been adjudicated dependent or neglected and (1) the parent has not reasonably complied with an appropriate, court-approved treatment plan or the plan has not been successful; (2) the parent is unfit; and (3) the parent’s conduct or condition is unlikely to change within a reasonable time. § 19-3-604(1)(c), C.R.S. (2015). In considering a motion to terminate the parent-child legal relationship, the court shall give primary consideration to the physical, mental, and emotional conditions and needs of the child. § 19-3-604(3), C.R.S. (2015).
¶20 Although absolute compliance with a treatment plan is not required, a parent’s partial or even substantial compliance may not result in a successful plan that renders the parent fit. People in Interest of N.A.T., 134 P.3d 535, 537 (Colo. App. 2006); see also People in Interest of C.A.K., 652 P.2d 603, 611 (Colo. 1982) (noting that a treatment plan, although complied with, may not be successful and that “[t]he fact that an individual fulfills the tasks and duties enumerated in the treatment plan does not mean that the individual will be able to meet his responsibilities as a parent”).
¶21 In determining whether a parent is unfit, the court must consider, as pertinent here, whether the conduct or condition of the parent renders him or her unable or unwilling to give the child reasonable parental care, including, at a minimum, nurturing and safe parenting sufficiently adequate to meet the child’s physical, emotional, and mental health needs and conditions. § 19-3-604(2), C.R.S. (2015).
¶22 In determining whether a parent’s conduct or condition is unlikely to change within a reasonable time, the court may consider whether any change has occurred during the pendency of the dependency and neglect proceeding, the parent’s social history, and the chronic or long-term nature of the parent’s conduct or condition. K.D. v. People, 139 P.3d 695, 700 (Colo. 2006). A reasonable time is not an indefinite time, and it must be determined by considering the physical, mental, and emotional conditions and needs of the child. See § 19-3-604(3); People in Interest of D.L.C., 70 P.3d 584, 589 (Colo. App. 2003).
¶23 In addition, because the children at issue in this case were under the age of six when they were removed from the home, the EPP provisions required that they be placed in a permanent home within twelve months after their original out-of-home placement, unless the court determined that a placement in a permanent home was not in the children’s best interests at that time. §§ 19-1-102(1.6), 19-3-703, C.R.S. (2015). Moreover, in an EPP case, no parent may be found to be in reasonable compliance with or to have successfully completed a court-approved treatment plan when the parent (1) “exhibits the same problems addressed in the treatment plan without adequate improvement” and (2) “is unable or unwilling to provide nurturing and safe parenting sufficiently adequate to meet the child’s physical, emotional, and mental health needs and conditions despite earlier intervention and treatment for the family.” § 19-3-604(1)(c)(I)(B), C.R.S. (2015).
¶24 The credibility of witnesses, the sufficiency, probative effect and weight of the evidence, and the inferences and conclusions to be drawn therefrom are all within the province of the district court, and we will not disturb that court’s conclusions on review unless they are so clearly erroneous as to find no support in the record. C.A.K., 652 P.2d at 613.
¶25 Here, as noted above, the evidence established that mother (1) had extensive contacts with father, (2) did not disclose the great majority of these contacts to the caseworker and GAL, and (3) actively concealed and was repeatedly untruthful about such contacts. The evidence further showed that mother’s dishonesty compromised the integrity of the therapeutic process and when combined with mother’s mental health issues, suggested to mother’s therapist that mother was comfortable creating havoc and chaos in her home, which caused the therapist concern regarding the state of the household and the quality of life for mother and the children. In addition, C.E.M. appeared to have symptoms of trauma and high anxiety, and she needed consistent and predictable physical and emotional safety.
¶26 Based on this evidence, the district court concluded that (1) mother’s conduct prevented her from providing protection adequate to meet the children’s needs, (2) the treatment plan was unsuccessful, (3) mother was unfit, and (4) mother’s deficiencies regarding her ability to demonstrate appropriate protective capacities were unlikely to change within a reasonable time. As demonstrated by the evidence discussed above, each of the court’s findings and conclusions was amply supported by the evidence.
¶27 The division’s analysis in People in Interest of C.T.S., 140 P.3d 332, 334 (Colo. App. 2006), supports our conclusion here. In C.T.S., 140 P.3d at 334, the mother’s treatment plan required her to “maintain a safe, stable home and employment” but did not require her to end her relationship with the father. At the termination hearing, the caseworkers testified that the mother’s ongoing relationship with the father was problematic because (1) the father had not addressed his substance abuse and domestic violence problems, (2) the caseworkers had frequently addressed this concern with the mother and the father, (3) the caseworkers advised the mother that the children were more likely to be returned to her if she separated from the father, and (4) the children could not be safely returned to the parents as a couple. Id. The district court found that because of the mother’s continued involvement with the father, she had not complied with her treatment plan’s requirement that she provide a safe environment for her children. Id.
¶28 The division affirmed, reasoning:
Although the treatment plan did not require mother to end her relationship with father, mother was aware of the caseworkers’ safety concerns about her violent relationship with him, and the treatment plan required that she participate in domestic violence treatment to address these concerns. However, after completing treatment, mother chose to remain in a relationship with father. Thus, mother’s conduct prevented her from providing protection adequate to meet the children’s needs and rendered her unfit.
Id. 
¶29 Here, as in C.T.S., the treatment plan did not require mother to end her relationship with father. To the contrary, notwithstanding the protective issues that mother and father’s relationship posed for the children, mother’s treatment plan envisioned her and father’s remaining together as a couple while working on their respective treatment plans together. To allow this to occur while ensuring the children’s safety, however, the plan required mother to demonstrate appropriate protective capacities by, among other things, reporting any contact that she had with father. Mother did not comply with this requirement, and the district court thus found, with ample record support, that mother’s treatment plan was unsuccessful, thereby warranting the termination of her parent-child relationship with the children.
¶30 Because each of the district court’s foregoing findings and conclusions was well supported by the record, we will not disturb those findings and conclusions. See C.A.K., 652 P.2d at 613.
III. Conclusion
¶31 For these reasons, the judgment is affirmed.
 
JUSTICE EID dissents, and CHIEF JUSTICE RICE and JUSTICE COATS join in the dissent.

JUSTICE EID, dissenting.
¶32 The caseworker in this case testified that she intentionally did not include a requirement in the treatment plan that mother disassociate from father because she wanted to encourage them to enter treatment together. Yet in a classic bait-and-switch, the trial court expressly based its decision on the fact that she was unable to cut ties with him. I would find that the treatment plan was not an “appropriate” one under section 19-1-103(10), C.R.S. (2015), because, at the very least, it was misleading and thus could not support termination in this case. Accordingly, I respectfully dissent.
¶33 Mother is a victim of domestic violence. At the conclusion of the termination hearing, the trial court stated:
I 100 percent believe that [mother] is a victim; that [father] has control over her that she wishes he did not have; that she understands better today than she ever has what a negative influence he has had on her life. I find that beyond a reasonable doubt—absolutely beyond a reasonable doubt—that she understands how awful this is.
The court, however, went on to base its decision on mother’s inability to separate from father, stating: “But I also believe by clear and convincing evidence that she can’t make him go away. And it’s not safe for these children at all . . . to be returned.” In other words, the trial court terminated mother’s parental rights based on her inability to cut ties with father.
¶34 But her treatment plan did not require mother to cut ties. In fact, according to the caseworker, such a requirement was intentionally not included in the plan because there was hope that she would attend treatment with father. Instead, the plan required mother to report any contact she had with father, and to not allow the children to be around him.
¶35 Parental rights cannot be terminated unless it is found, by clear and convincing evidence, that “an appropriate treatment plan approved by the court has not been reasonably complied with by the parent . . . or has not been successful . . . .” § 19-3-604(c)(I), C.R.S. (2015) (emphasis added). An “appropriate” plan “is reasonably calculated to render the particular [parent] fit to provide adequate parenting to the child within a reasonable time and . . . relates to the child’s needs.” § 19-1-103(10). Thus, an appropriate treatment plan is one that sets out a course of action that will “help the parent overcome those difficulties which led to a finding that the child was neglected or dependent.” People in the Interest of C.A.K., 652 P.2d 603, 610 (Colo. 1982). Here, the treatment plan did not set forth such a plan of action; in fact, it did the very opposite. It led mother to believe that as long as she reported her contact with father and kept him away from the children, she could have contact with him. At bottom, in light of the court’s termination order, the treatment plan was not “appropriate” because it was misleading at best.
¶36 The majority takes issue with this court’s characterization in the certiorari question, see maj. op. ¶ 3 n.1, that termination was based on mother’s inability to cut ties with father. Finding this to be a false premise, the majority states that the real question is whether the district court erred in terminating mother’s parental rights based on the evidence. Id. at ¶¶ 17–18. But there is no arguing with the trial court’s statement that “I . . . believe by clear and convincing evidence that she can’t make [father] go away. And it’s not safe for these children at all . . . to be returned.” Indeed, the court of appeals understood this as the basis of the trial court’s termination order. See People in the Interest of C.E.M., No. 14CA1527, slip op. at 10 (May 28, 2015) (stating that “the court did not believe mother was capable of keeping father away. Thus, it concluded mother’s treatment plan was not successful . . . .”). There is no ambiguity here; the trial court terminated mother’s parental rights on the ground that she could not make father “go away.”
¶37 As the majority correctly points out, mother did fail to report her contacts with father. Maj. op. ¶ 29. The majority transforms this failure to report into an inability to “demonstrate appropriate protective capacities in her parenting.” Id. But the trial court did not make this conclusion. In fact, there was no evidence that mother permitted the children to be in father’s presence. As the trial court stated, the “crux” of the case was mother’s relationship with father—which, under the treatment plan, was allowed to continue.
¶38 The majority relies upon People in the Interest of C.T.S., 140 P.3d 332 (Colo. App. 2006), to support its conclusion. Maj. op. ¶ 27. In C.T.S., mother’s parental rights were terminated for her failure to disassociate herself from father, even though she was not required to terminate the relationship under her treatment plan. 140 P.3d at 334. There are factual differences between this case and C.T.S.; for example, in that case, caseworkers “had advised mother that the children were more likely to be returned to her if she separated from father.” Id. But to the extent that C.T.S. based termination on mother’s failure to cut ties with father when the treatment plan included no such requirement, it should simply be overruled. In this case, the trial court expressly noted its reliance on C.T.S., which is further evidence that it did not see a problem in terminating mother’s parental rights based on mother’s failure to end her relationship with father when such a condition was intentionally omitted from the treatment plan. ¶39 In the end, the treatment plan in this case set mother up for failure from the beginning. By permitting her to continue her relationship with father, the plan—by definition—set the stage for termination, and was therefore not appropriate. Because the majority implicitly approves of this practice, I respectfully dissent.
I am authorized to state that CHIEF JUSTICE RICE and JUSTICE COATS join in this dissent.

1 We granted certiorari on the following issue:
Whether the juvenile court erred in terminating a mother’s parental rights based on her continued relationship with the children’s father, whom the juvenile court found to pose a threat to the children’s welfare, where the mother’s treatment plan did not prohibit her from maintaining