25CA0261 Peo in Interest of AM 07-24-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0261
Weld County District Court No. 23JV5
Honorable W. Troy Hause, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of A.M., K.M., and M.M., Children,

and Concerning B.M.,

Appellant.

---

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE LIPINSKY
Pawar and Lum, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 24, 2025

---

Bruce T. Barker, County Attorney, David S. Anderson, Assistant County
Attorney, Greeley, Colorado, for Appellee

Debra W. Dodd, Counsel for Youth, Berthoud, Colorado, for A.M.

Debra W. Dodd, Guardian Ad Litem, for K.M. and M.M.

Just Law Group, LLC, John F. Poor, Denver, Colorado, for Appellant

¶ 1     A.M. (mother) appeals the judgment terminating her parent-child legal relationships with A.M., K.M., and M.M. (the children). We affirm.

## I.     Background

¶ 2     The Weld County Department of Human Services (the Department) became involved with the family and filed a petition in dependency or neglect for the children due to concerns about substance abuse and appropriate housing.  The juvenile court adjudicated the children dependent or neglected and adopted a treatment plan for mother.

¶ 3     Fifteen months after the Department filed the petition, it moved to terminate mother's parental rights.  The court granted the motion following a two-day evidentiary hearing.

¶ 4     On appeal, mother asserts that (1) the court erroneously found that she was unfit and unable to become fit within a reasonable time; (2) the Department did not make reasonable efforts to rehabilitate her; and (3) the court admitted and relied on hearsay evidence.

## II. Criteria for Termination of Parental Rights

¶ 5    A juvenile court may terminate parental rights if it finds by clear and convincing evidence that (1) the child has been adjudicated dependent or neglected; (2) the parent did not comply with, or was not successfully rehabilitated by, an appropriate, court-approved treatment plan; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change within a reasonable time. § 19-3-604(1)(c), C.R.S. 2024; *People in Interest of E.S.*, 2021 COA 79, ¶ 10, 494 P.3d 1142, 1144.

¶ 6    Whether a juvenile court properly terminated parental rights is a mixed question of fact and law. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 15, 480 P.3d 682, 686. We review the juvenile court's findings of evidentiary fact — the raw, historical data underlying the controversy — for clear error and accept them if they have record support. *People in Interest of S.R.N.J-S.*, 2020 COA 12, ¶ 10, 486 P.3d 1201, 1204.

¶ 7    When a child is under six years old at the time a petition in dependency or neglect is filed, the juvenile court must consider the statutory expedited permanency planning (EPP) provisions, which require that the child be placed in a permanent home as

2

expeditiously as possible.  §§ 19-1-102(1.6), 19-1-123, 19-3-702(5)(c), C.R.S. 2024; *see also People in Interest of S.Z.S.*, 2022 COA 133, ¶ 25, 524 P.3d 1209, 1216.

¶ 8 The credibility of the witnesses; the sufficiency, probative effect, and weight of the evidence; and the inferences and conclusions to be drawn therefrom are all matters within the province of the juvenile court.  For this reason, we will not disturb the juvenile court's findings on these issues unless they are so clearly erroneous as to find no record support.  *People in Interest of S.N-V.*, 300 P.3d 911, 912 (Colo. App. 2011).  But determining the proper legal standard to apply in a case and applying that standard to the facts of the case are questions of law that we review de novo.  *M.A.W. v. People in Interest of A.L.W.*, 2020 CO 11, ¶ 31, 456 P.3d 1284, 1289.

### III.  Fitness

¶ 9 Mother asserts that the juvenile court erred by finding that she was unfit and unable to become fit within a reasonable period of time.  She further argues the court erred by applying an erroneously stringent standard of parental fitness to justify terminating her parental rights.  We disagree.

### A. Applicable Law

¶ 10 An unfit parent is one whose conduct or condition renders the parent unable or unwilling to give a child reasonable parental care. *People in Interest of S.K.*, 2019 COA 36, ¶ 74, 440 P.3d 1240, 1254. Reasonable parental care requires, at a minimum, that the parent provide nurturing and safe parenting adequate to meet the child's physical, emotional, and mental needs and conditions. *Id.*

¶ 11 In determining whether a parent's conduct or condition is likely to change in a reasonable time, the court may consider whether any change occurred during the proceeding, the parent's social history, and the chronic or long-term nature of the parent's conduct or condition. *Id.* at ¶ 75, 440 P.3d at 1254.

¶ 12 A "reasonable time" is not an indefinite time, and a court must determine it by considering the child's conditions and needs. *Id.* What constitutes a reasonable time is fact specific and varies from case to case. *S.Z.S.*, ¶ 25, 524 P.3d at 1216. Where a parent has made little to no progress on a treatment plan, the juvenile court need not give the parent additional time to comply. *Id.* at ¶ 24, 524 P.3d at 1216.

## B. Analysis

¶ 13    In finding mother unfit, the court considered evidence of mother's increased compliance with her treatment plan, but it determined that she could not become fit in a reasonable time based on her delayed engagement in services, her history of drug abuse, and the family's previous dependency or neglect cases. The court also noted that the case was subject to the EPP provisions and found that it would not be in the children's best interests to allow mother additional time to comply with her treatment plan.

¶ 14    The record supports these findings, even though, as mother points out, during the last nine months of the case, she achieved sobriety and substantially increased her compliance with the treatment plan. But "increased compliance" over the course of a case does not necessarily justify additional time. *See People in Interest of V.W.*, 958 P.2d 1132, 1134-35 (Colo. App. 1998).

¶ 15    The record shows that treatment and services were available to mother throughout the case, but that she failed to engage in nearly any aspect of her treatment plan for the first thirteen or so months of the case. Even though mother achieved sobriety and completed inpatient treatment, the Department remained concerned about her

consistency and ability to maintain sobriety. *See People in Interest of D.L.C.*, 70 P.3d 584, 588 (Colo. App. 2003) (stating that, although absolute compliance is not required, "partial compliance, or even substantial compliance, may not result in a successful plan that renders the parent fit"). Mother admitted to substance abuse as recently as nine months before the termination hearing and testified at the hearing that she had been abusing substances off and on for the preceding eighteen years. *See E.S.V. v. People*, 2016 CO 40, ¶ 22, 370 P.3d 1144, 1148 ("In determining whether a parent's conduct or condition is unlikely to change within a reasonable time, the court may consider whether any change has occurred during the pendency of the dependency and neglect proceeding, to include . . . the chronic or long-term nature of the parent's conduct or condition.").

¶ 16    In addition, the caseworker testified that the Department had concerns that the older children were "parentified," mother was not receptive to professionals' feedback, and family time with the children remained supervised throughout the case because of safety concerns. The caseworker also opined that mother lacked financial and housing stability that would enable the children to return to

6

her and allow her to provide for the children's needs. Nonetheless, mother asserts that the "court unreasonably and erroneously concluded that the presence of the [c]hildren's as-yet unresolved trauma meant that [m]other was unable to meet the [c]hildren's emotional needs."

¶ 17 As required by statute, the court considered the children's emotional needs before terminating mother's parental rights. *See* § 19-3-604(1)(c)(B). Specifically, the court found that the children lacked trust in mother and it was "speculative at best" that, "if given more time, the relationship between mother and the children could be repaired" to such an extent to allow them to return home. But as described above, that was not the only factor the court considered.

¶ 18 In short, the court's findings and conclusions comport with applicable law and are supported by the record. *See People in Interest of C.T.S.*, 140 P.3d 332, 334-35 (Colo. App. 2006). We cannot reweigh the evidence or substitute our judgment to reach a different result. *See S.Z.S.*, ¶ 29, 524 P.3d at 1217. Therefore, we reject mother's arguments concerning fitness.

## IV.   Reasonable Efforts

¶ 19   Mother next contends that the Department did not make reasonable efforts to rehabilitate her and reunify her with the children.  We disagree.

### A.   Preservation

¶ 20   The guardian ad litem (GAL) notes the divisional split regarding whether raising a lack of reasonable efforts claim for the first time at a termination hearing preserves the issue for appeal. *Compare People in Interest of D.P.*, 160 P.3d 351, 354-55 (Colo. App. 2007) (holding that a parent waives any perceived deficiency in reasonable efforts not raised before the termination hearing), *with S.N-V.*, 300 P.3d at 913-18 (holding that an appellate court may consider a perceived deficiency in reasonable efforts not raised until the termination hearing).  We need not take sides regarding this split, however, because even if we assume that a parent can properly raise reasonable efforts for the first time at a termination hearing, we discern no basis for reversal.

### B.   Applicable Law

¶ 21   A department of human services must make reasonable efforts to rehabilitate the parent and reunite the parent with the child.

§§ 19-1-103(114), 19-3-208, 19-3-604(2)(h), C.R.S. 2024. The reasonable efforts standard is satisfied if the department provides services in accordance with section 19-3-208. § 19-1-103(114). Section 19-3-208 requires that a department provide screenings, assessments, and individual case plans for the provision of services; home-based family and crisis counseling; information and referral services to available public and private assistance resources; family time; and placement services. § 19-3-208(2)(b).

¶ 22     In assessing a department's reasonable efforts, the juvenile court should consider whether the services provided were appropriate to support the parent's treatment plan, *S.N-V.*, 300 P.3d at 915, by "considering the totality of the circumstances and accounting for all services and resources provided to a parent to ensure the completion of the entire treatment plan," *People in Interest of My.K.M. v. V.K.L.*, 2022 CO 35, ¶ 33, 512 P.3d 132, 143. The parent is ultimately responsible for using the services to comply with the plan, *People in Interest of J.C.R.*, 259 P.3d 1279, 1285 (Colo. App. 2011), and the court may consider a parent's unwillingness to participate in treatment in determining whether

the department made reasonable efforts, *see People in Interest of A.V.*, 2012 COA 210, ¶ 12, 297 P.3d 1019, 1022.

¶ 23    Whether a department satisfied its obligation to make reasonable efforts presents a mixed question of fact and law.  *People in Interest of A.S.L.*, 2022 COA 146, ¶ 8, 527 P.3d 404, 407.

## C.    Analysis

¶ 24    Mother contends that the Department did not make reasonable efforts to rehabilitate her and reunify her with the children because it failed to (1) timely make available family therapeutic services and (2) give priority to reunification after mother made progress on her treatment plan.

¶ 25    The court found that the Department made reasonable efforts and that mother's delay in engaging with the treatment plan prevented her reunification with the children.  *See A.V.*, ¶ 12, 297 P.3d at 1022.  The record supports these findings.

¶ 26    The record shows the delay in family therapy was attributable to mother's lack of engagement early in the case and a professional recommendation that sessions be held with the children separately before bringing mother into the sessions.

¶ 27 As described above, mother did not fully engage in the case until the case had been open approximately thirteen months. Contrary to mother's assertions, the record shows that the caseworker first suggested family therapy in May 2024 after one of the children allegedly reported he did not trust that mother would stay sober. Mother never requested family therapy before the caseworker's suggestion. The caseworker additionally testified that, once mother agreed to family therapy, the caseworker submitted a referral in July 2024, and intake for family therapy began the next month.

¶ 28 We acknowledge that, as mother describes, she lacked an opportunity to begin family therapy until shortly before the termination hearing. However, the caseworker testified that this delay was attributable to the family therapist's recommendation that the sessions start with only the children, and that mother be brought in later when the children "felt it was most appropriate."

¶ 29 For these reasons, we discern no error in the court's determination that the Department made reasonable efforts to reunite mother with the children.

## V. Hearsay

¶ 30    Lastly, mother asserts that the court improperly admitted and relied on "voluminous hearsay evidence" through the caseworker's testimony and report, as well as through the children's therapist's testimony. We discern no reversible error.

### A. Applicable Law

¶ 31    Hearsay is a statement other than one "made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." CRE 801(c). Hearsay statements are generally inadmissible at trial unless an exception applies. CRE 802; *Vista Resorts, Inc. v. Goodyear Tire & Rubber Co.*, 117 P.3d 60, 66 (Colo. App. 2004). A statement is not hearsay, however, if it is not offered for the truth of the matter asserted but, rather, to show its effect on the listener. *See, e.g., People v. Robinson*, 226 P.3d 1145, 1151-52 (Colo. App. 2009) (noting that informants' statements offered to show their effect on the listening police officers are not hearsay).

¶ 32    The hearsay rule does not bar the admission of "written reports and other material relating to [a] child's mental, physical, and social history" offered to "determin[e] proper disposition of a

12

child," so long as the report's author is available, at the request of "the child, his parent or guardian, or other interested party," to "appear as a witness" and is "subject to both direct and cross-examination." § 19-1-107(2), C.R.S. 2024. Accordingly, a caseworker's report is admissible at a termination hearing to determine the proper disposition of a child even if the report contains hearsay. *Id.*; *see also People in Interest of A.M.D.*, 648 P.2d 625, 641 (Colo. 1982).

### B.    Analysis

#### 1.    Caseworker Report and Testimony

¶ 33    Mother asserts that the court improperly admitted child hearsay statements through the caseworker's report and testimony.

¶ 34    A department is required to make a social study and report in writing in all dependency or neglect cases unless waived by the court. § 19-1-107(1). As noted above, such reports are admissible at termination hearings pursuant to section 19-10-107(2), even if they contain hearsay. *See People in Interest of A.R.S.,* 502 P.2d 92, 94 (Colo. App. 1972) ("Because of the statutory authorization, the common-law hearsay objections as to the admissibility of such reports are not applicable."). "Where the statute authorizes

consideration of [such] reports, the fact that they may contain hearsay . . . becomes a matter concerning their weight and probative value and not their admissibility." *Id.* at 95.

¶ 35 At the termination hearing, the Department moved to admit the caseworker's termination report into evidence during the caseworker's testimony. Mother objected to the report "insofar as it contains hearsay statements" and argued that she had no way of "test[ing] the credibility of the statements that were given." The alleged hearsay consisted of the children's statements concerning mother's alleged previous neglect, substance abuse, and criminal activity, as well as the children's purported desire to be adopted. Mother further asserted that she did not receive proper notice that the report "contains child-hearsay statements."

¶ 36 The court overruled mother's objection and admitted the termination report, finding that it was admissible by statute and any objection would go to its weight and not its admissibility. Further, the court observed that the hearsay statements in the report were not being admitted "for the truth of the matter asserted" but for the basis of the caseworker's opinion. *See People in Interest of J.E.B.*, 854 P.2d 1372, 1375-76 (Colo. App. 1993) (holding that

14

"CRE 703 permits an expert to rely on facts and data reasonably relied upon by experts in that field," including reports and information "which otherwise might have been objectionable hearsay"). Moreover, the Department never claimed that the children's statements were true and did not ask the court to find the truth of the matter asserted in the statements. CRE 801. Finally, even if the report contained hearsay, the report was nonetheless admissible under sections 19-1-107 and 19-3-604(3), C.R.S. 2024 — the criteria for termination statute — as the caseworker who wrote the report testified and was subject to direct and cross examination. *See A.R.S.*, 502 P.2d at 94.

¶ 37　　Thus, contrary to mother's assertion, the court did not rely on improper child hearsay statements when it terminated mother's parental rights. *See People v. Phillips*, 2012 COA 176, ¶ 87, 315 P.3d 136, 157-58 ("If the out-of-court statements are admissible either as relevant nonhearsay or under another evidentiary exception to the hearsay rule," section 13-25-129, C.R.S. 2024 (the child hearsay statute), "does not apply.").

## 2. Therapist Testimony

¶ 38    Mother next asserts that the court improperly admitted hearsay statements through the children's therapist's testimony. The Department and GAL contend that mother did not preserve her hearsay argument regarding the therapist's testimony. Mother responds that she preserved the argument and that, even if she did not preserve it, this court should review it anyway to avoid a miscarriage of justice. We reject mother's argument because she (1) did not preserve it for appeal and (2) is not entitled to relief under the miscarriage of justice exception to the preservation requirement.

### a. Preservation

¶ 39    In dependency or neglect proceedings, appellate courts do not consider issues that were not preserved in the trial court, such as challenges to the admission of evidence that were not timely made at trial. *See People in Interest of M.B.*, 2020 COA 13, ¶ 14, 459 P.3d 766, 769. To preserve an issue for appeal, a party must present the court with "an adequate opportunity to make findings of fact and conclusions of law on [the] issue." *Forgette v. People*, 2023 CO 4,

16

¶ 21, 524 P.3d 1, 5 (quoting *People v. Melendez*, 102 P.3d 315, 322 (Colo. 2004)).

¶ 40 Mother contends that the children's therapist offered several improper child hearsay statements regarding (1) the children's lack of trust in mother; (2) incidents of concern that allegedly occurred while the children were in mother's care; and (3) secondhand observations of the children's alleged behavior that was purportedly triggered by contact with mother or the prospect of them returning home. Mother did not object to the admission of any of this evidence.

¶ 41 Consequently, mother did not preserve her hearsay argument. *See Martinez v. People*, 2015 CO 16, ¶ 14, 344 P.3d 862, 868 (holding that an objection must be "specific enough to draw the trial court's attention to the asserted error").

b. Miscarriage of Justice Exception

¶ 42 Nevertheless, mother argues that we should address her unpreserved assertion under the miscarriage of justice exception to the preservation rule. In those rare cases involving unusual or special circumstances, we may review unpreserved errors in a dependency or neglect case to prevent a miscarriage of justice.

17

*M.B.*, ¶¶ 19-25, 459 P.3d at 770-71; *see, e.g.*, *People in Interest of T.W.*, 2022 COA 88M, ¶ 24, 519 P.3d 1071, 1077; *E.S.*, ¶ 14, 494 P.3d at 1145; *People in Interest of A.E.*, 914 P.2d 534, 539 (Colo. App. 1996). *But see S.Z.S.*, ¶ 21 n.1, 524 P.3d at 1216 n.1 (declining to apply the miscarriage of justice exception).

¶ 43     Mother appears to assert that the miscarriage of justice exception should apply to her unpreserved hearsay argument because the termination hearing implicated her fundamental right to parent. But *all* dependency or neglect cases impact parents' fundamental liberty interest in parenting their children. Therefore, under mother's reasoning, every putative error in a dependency or neglect case would be subject to appellate review regardless of whether it was preserved. This approach would render the preservation requirement and the miscarriage of justice exception meaningless.

¶ 44     Thus, we decline to review mother's unpreserved hearsay argument under the miscarriage of justice exception.

## VI.    Disposition

¶ 45     The judgment is affirmed.

JUDGE PAWAR and JUDGE LUM concur.

18